TODD W. BURNS
California State Bar No. 194937
todd@burnsandcohan.com
Burns & Cohan, Attorneys at Law
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 236-0244
Facsimile: (619) 768-0333

Counsel for James Dolan

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 17-cr-0623-JLS |
| Plaintiff, ) | |
| ) | Date: March 21, 2019 |
| vs. ) | Time: 9:00 a.m. |
| ) | |
| JAMES DOLAN (4), ) | |
| Defendant. ) | |
| ———————————————— ) | |

DEFENDANT JAMES DOLAN'S NOTICE OF MOTIONS AND
MOTIONS TO: (1) HOLD EVIDENTIARY HEARING AND PROVIDE
REMEDY FOR GOVERNMENT'S DESTRUCTION OF EVIDENCE,
(2) DISMISS FOR NUMEROUS REASONS, (3) LIMIT GOVERNMENT'S
CASE TO WHAT IS CHARGED IN INDICTMENT OR COMPEL A BILL
OF PARTICULARS, (4) SEVER DEFENDANTS' CASES FOR TRIAL,
(5) COMPEL NOTICE RE *BRADY* MATERIALS, AND
(6) JOIN CO-DEFENDANTS' MOTIONS

**TABLE OF CONTENTS**

*Page*

NOTICE OF MOTIONS AND MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION AND SUMMARY OF CHARGES AGAINST
     MR. DOLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Indictment Counts Charging Mr. Dolan . . . . . . . . . . . . . . . . . . . . 2

          1.   Count 1 – Bribery Conspiracy . . . . . . . . . . . . . . . . . . . . . . . 2

          2.   Count 5 – Substantive Bribery Offense(s) . . . . . . . . . . . 3

          3.   Count 13 – Honest Services Fraud Conspiracy . . . . . . . 4

II.  HOLD EVIDENTIARY HEARING AND IMPOSE
     APPROPRIATE REMEDY FOR GOVERNMENT'S
     DESTRUCTION OF KEY EMAIL EVIDENCE . . . . . . . . . . . . . . . . . . . 4

     A.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   Relevant Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     C.   The Court Should Hold An Evidentiary Hearing To
          Determine Key Facts Relevant To The Appropriate Remedy
          For The Government's Withholding, Or Destruction, Of
          Key Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. DISMISS COUNTS 1 AND 13 DUE TO FAILURE
     TO CHARGE WHEN MR. DOLAN JOINED CONSPIRACY,
     LIMIT GOVERNMENT'S CASE TO INDICTMENT, AND
     COMPEL BILL OF PARTICULARS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.   The Indictment's Quid And Quo Allegations, And Motion
          To Dismiss All Counts Naming Mr. Dolan For Failure To
          Charge When He Allegedly Entered The Charged
          Conspiracies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          1.   Charged Quids – Things Mr. Francis Allegedly Did
               For Mr. Dolan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

               a.   Defendant Stephen Shedd Delivers Wine To
                    Mr. Dolan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

               b.   Hong Kong Port Visit – January 28 To
                    February 1, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

               c.   Bangkok Port Visit – May 1-4, 2008 . . . . . . . . . 13

i

d.     Singapore Port Visit – May 6-9, 2008 . . . . . . . . . 13

e.     Jakarta Port Visit – May 12-14, 2008 . . . . . . . . . 14

f.     Kota Kinabalu Port Visit – May 17-20, 2008 . . . 14

g.     Manila Port Visit – May 22-25, 2008 . . . . . . . . . 14

h.     Hong Kong Port Visit – November 25-29, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i.     Christmas Gift – December 2008 . . . . . . . . . . . . 14

j.     Manila Port Visit – February 19-22, 2009 . . . . . 14

k.     Bangkok Leave – July 1-3, 2009 . . . . . . . . . . . . . 14

l.     Singapore Leave – July 17-24, 2009 . . . . . . . . . 15

2.     Charged Quos – Things Mr. Dolan Allegedly Did For Mr. Francis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

a.     Navy Payment To GDMA Related To USS Kitty Hawk's Cancelled Port Visit to Hong Kong In November 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . 15

b.     Late Payments To GDMA By Submarine Group Seven . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

c.     Pressure To Close Navy's Hong Kong Ship Support Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

d.     Billing Dispute Between GDMA And Singapore FISC Office . . . . . . . . . . . . . . . . . . . . . . 16

e.     Vladivostok, Russia, Port Visit . . . . . . . . . . . . . . 16

f.     Navy's Outstanding Payment Issues For Seventh Fleet Units . . . . . . . . . . . . . . . . . . . . . . . . . 16

g.     Mr. Dolan's Exerting Contracting Influence For GDMA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

h.     Cooperation Afloat Readiness and Training (CARAT) Contract Influence . . . . . . . . 17

i.     Contract Influence Regarding A Navy Ship Port Visit To Reunion Island . . . . . . . . . . . . . . . 17

j.     Contract Influence Regarding CARAT Thailand Transportation Issues . . . . . . . . . . . . . . 17

C.    The Government Should Be Limited To Proceeding On The
      Quid And Quo Allegations Found In The Indictment . . . . . . . 18

D.    If The Government Is Permitted To Proceed With Respect
      To Quids And Quos Not Alleged In The Indictment, It Should
      Be Required To Identify And Describe Those In A
      Bill Of Particulars . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   DISMISS BASED ON STATUTE OF LIMITATIONS
      AND CONSTITUTIONAL PRE-INDICTMENT DELAY . . . . . . . . 20

      A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      B.    Count 5 – The Substantive Bribery Charge . . . . . . . . . . . . . . . . 21

      C.    Count 1 – The Bribery Conspiracy Charge . . . . . . . . . . . . . . . . . 22

            1.    The Government Impermissibly – And
                  Duplicitously – Charges A Cover-Up As Part Of
                  The Count 1 Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

            2.    The Evidence Shows That Even If Mr. Dolan Were
                  A Member Of The Charged Conspiracy, He Abandoned
                  That Role In July 2009, Thus His Offense Conduct
                  Falls Outside The Limitations Period . . . . . . . . . . . . . . . . 25

            3.    The Indictment And Evidence Do Not Support That
                  Mr. Dolan Was Part Of Any Conspiracy Related To
                  Mr. Lausman And Mr. Francis In June To
                  August 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      D.    Count 13 – The Honest Services Wire Fraud Conspiracy
            Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      E.    All Counts Should Be Dismissed Under The Fifth
            Amendment, Federal Rule Of Criminal Procedure 48,
            And The Court's Supervisory Powers . . . . . . . . . . . . . . . . . . . . . 27

V.    DISMISS ALL COUNTS – INVALID CASE THEORY
      AND VAGUENESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      B.    *McDonnell v. United States* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      C.    Invalidity Of Government's §201(b)(2) Theories/Charges,
            And Vagueness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

            1.    The Government's §201(b)(2)(C) Theory
                  (Or Theories) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

            2.    The Government's §201(b)(2)(A) Theory
                  (Or Theories) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

iii

VI.     DISMISS ALL COUNTS – VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

VII.    DISMISS COUNT 5 – DUPLICITY AND IMPROPER CHARGE
        AS CONTINUING OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

VIII.   DISMISS COUNT 13 – IMPROPER CONCEALMENT-
        OF-MATERIAL-INFORMATION THEORY, AND NO FACTS
        SUPPORTING KICKBACK THEORY . . . . . . . . . . . . . . . . . . . . . . . . . . 40

IX.     DISMISS COUNT 1 – MULTIPLICITY . . . . . . . . . . . . . . . . . . . . . . . . 41

X.      DISMISS COUNT 13 – FAILURE TO PLEAD ELEMENTS AND
        INVALID OFFENSE THEORIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

        A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

        B.    Count 13 Fails To Charge An Intent To Harm . . . . . . . . . . . . . 43

        C.    Count 13 Fails To Allege An Agreement To Use Wires . . . . . 44

        D.    Count 13 Fails To Allege Elements Of Bribery . . . . . . . . . . . . 45

XI.     DISMISS COUNT 1 – INVALID OFFENSE THEORIES
        RELATING TO §201(b)(1) AND CONSPIRING TO AID AND
        ABET BRIBERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XII.    SEVER DEFENDANTS' CASES FOR TRIAL . . . . . . . . . . . . . . . . . . 47

XIII.   COMPEL IDENTIFICATION OF *BRADY* MATERIAL . . . . . . . . . . 48

XIV.    JOIN MOTIONS FILED BY CO-DEFENDANTS . . . . . . . . . . . . . . . 50

XV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

CERTIFICATE OF SERVICE

Exhibits

        A     9/13/18 Jensen Letter to Court

        B     Stewart, Burns, and Jensen Emails, Date Range July 13-October 1, 2018

        C     12/13/18 Young Letter

1

**NOTICE OF MOTIONS AND MOTIONS**

2      At the date and time set out above, Defendant James Dolan will move the Court

3   to:  (1) hold an evidentiary hearing and impose an appropriate remedy for the

4   government's destruction of key evidence; (2) dismiss counts 1 and 13 due to failure

5   to charge when Mr. Dolan joined conspiracies alleged, limit government's case to

6   indictment, and compel bill of particulars; (3) dismiss all counts based on statute of

7   limitations and constitutional pre-indictment delay; (4) dismiss all counts due to

8   invalid case theory and vagueness; (5) dismiss all counts based on venue; (6) dismiss

9   count 5 based on duplicity and improper charge as continuing offense; (7) dismiss

10  count 13 based on improper concealment-of-material-information theory, and no facts

11  supporting kickback theory; (8) dismiss counts 1 and 5 due to multiplicity; (9)

12  dismiss count 13 due to failure to plead elements and invalid offense theories; (10)

13  dismiss count 1 due to invalid offense theories relating to 18 U.S.C. §201(b)(1) and

14  conspiring to aid and abet bribery; (11) sever Defendants' cases for trial; (12) compel

15  identification of *Brady* material; and (13) join motions filed by co-Defendants.  These

16  motions are supported by the memorandum of points and authorities below.

17             **MEMORANDUM OF POINTS AND AUTHORITIES**

18                                        **I.**

19                   **INTRODUCTION AND SUMMARY OF**
                     **CHARGES AGAINST MR. DOLAN**

20

21  **A.      Introduction**

22      James Dolan is charged in three counts of a thirteen-count indictment that

23  names nine Defendants.  For Mr. Dolan, the indictment focuses on July 2007 to July

24  2009.  During that time, Mr. Dolan was a United States Navy Captain and served as

25  the Assistant Chief of Staff for Logistics for the Navy's Seventh Fleet, which operates

26  throughout the Western Pacific Ocean, predominantly East Asia.  Mr. Dolan's job

27  was to oversee supply and logistics for the Seventh Fleet, to ensure the Navy could

28  meet its operational objectives.  That included ensuring that the needs of Navy ships

were met during port visits, needs met largely by private husbanding agents who contracted with the Navy. Those contracts were negotiated between the husbanding agents and the Navy's Fleet and Industrial Supply Center (FISC). Neither Mr. Dolan, nor those in his chain of command, were responsible for negotiating or entering into those contracts. While it was not Mr. Dolan's responsibility to negotiate contracts with husbanding agents, it was his responsibility to ensure that such contracts were in place so that the needs of Navy ships were met when in port.

At the most basic level, the indictment alleges that: (1) Leonard Francis, who owned the dominant husbanding agent in Southeast Asia, Glenn Defense Marine Asia (GDMA), gave Mr. Dolan bribes; and (2) in exchange, Mr. Dolan performed official acts, and did and omitted to do things in violation of his official duties. The specific charges against Mr. Dolan, found in three of the indictment's counts, are summarized below.

**B.    Indictment Counts Charging Mr. Dolan**

**1.    Count 1 – Bribery Conspiracy**

Count 1 charges Mr. Dolan and the other eight Defendants with conspiracy to commit bribery. The core/elements section of that count states:

> Beginning in or about February 2006 on the high seas and outside the jurisdiction of any particular district, and continuing through at least February 2014, [Mr. Dolan and the other eight] defendants [charged] . . . did knowingly and intentionally conspire and agree with each other and with others . . . to commit an offense against the United States, namely bribery; that is, (1) the defendants and others knowingly agreed that, in return for the defendants being influenced in the performance of official acts and being induced to do and omit to do acts in violation of their official duties, and aiding and abetting other defendants to be so influenced and induced, (a) Francis and others would directly and indirectly, corruptly give, offer, and promise things of value to the defendants, collectively and individually, including meals, entertainment, travel and hotel expenses, gifts, cash, and the services of prostitutes, and (b) the defendants, collectively and individually, would directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept these things of value personally and for other persons; and (2) the defendants and others took overt acts in furtherance of this conspiracy, in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C), and Title 18, United States Code, Section 2.

//

2

Indictment at ¶32 (Docket #1).  Paragraph 36 charges 219 paragraphs (and multiple sub-paragraphs) of alleged overt acts for count 1.

As indicated, the two substantive offenses underlying the charged bribery conspiracy (*i.e.*, the objects) are 18 U.S.C. §201(b)(2)(A) and (C).[1]  The former states:

> Whoever . . . being a public official . . . directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any official act . . . shall be [punished as indicated].

18 U.S.C. §201(b)(2)(A).  Subsection (C) provides the same penalties for a public official who:

> directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being induced to do or omit to do any act in violation of the official duty of such official or person . . . .

## 2.    Count 5 – Substantive Bribery Offense(s)

Mr. Dolan is charged alone in count 5, with bribery under 18 U.S.C. §201(b)(2)(A) and (C).  That count incorporates paragraphs 1-30 and 36 of the indictment (*i.e.*, the portions of the indictment containing the count 1 bribery conspiracy, minus the elements and "objects of the conspiracy" paragraphs), and states:

> Beginning in or about January 2008 on the high seas and out of the jurisdiction of any particular district and continuing through at least in or about September 2013, [Mr. Dolan], a public official, engaged in a course of conduct whereby he directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept things of value, personally and for other persons, including entertainment, hotel stays, and the services of prostitutes, in return for being influenced in the performance of official acts and in return for being induced to do and omit to do acts in violation of his official duties, as opportunities arose.  All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C).

---

[1]  However, the portion of count 1 after (a) – beginning with "Francis and others" – quotes the offense language in §201(b)(1), which is not charged as an object.

1    Indictment at ¶44 (Docket #1).

2        **3.    Count 13 – Honest Services Fraud Conspiracy**

3        Count 13 charges Mr. Dolan and the other eight Defendants with conspiracy

4    to commit honest services wire fraud under 18 U.S.C. §§1343, 1346, and 1349.  That

5    count incorporates paragraphs 1-30 and 33-36 of the indictment (*i.e.*, the portions of

6    the indictment containing the count 1 bribery conspiracy (minus the elements

7    paragraph), and states:

8            Beginning in or about February 2006 on the high seas and outside the
         jurisdiction of any particular district and continuing through at least
9        February 2014, [Mr. Dolan and the eight other defendants] did
         knowingly and intentionally conspire and agree with each other and with
10       others, including Francis, Aruffo, AG, Brooks, Sanchez, and Dusek, to
         devise a material scheme and artifice to defraud the citizens of the
11       United States and the U.S. Navy of their rights to the honest, loyal, and
         faithful, services, decisions, actions, and performance, through bribery
12       and kickbacks and the concealment of material information; and for the
         purpose of executing this scheme, defendants and their conspirators
13       transmitted and caused to be transmitted writings, signs, and signals by
         means of wire communication in interstate and foreign commerce,
14       including many emails among the conspirators.  All in violation of Title
         18, United States Code, Sections 1349, 1346, and 1343.
15

16   Indictment at ¶61 (Docket #1).

17       Mr. Dolan now turns to his various motions to dismiss the counts of the

18   indictment in which he is named (or to dismiss him from those counts), and the other

19   motions set out his notice of motions above.

20                                    **II.**

21       **HOLD EVIDENTIARY HEARING AND IMPOSE APPROPRIATE**
                  **REMEDY FOR GOVERNMENT'S DESTRUCTION**
22                      **OF KEY EMAIL EVIDENCE**

23   **A.    Introduction**

24       Mr. Dolan requests that the Court hold an evidentiary hearing to determine the

25   appropriate remedy for the government's apparent destruction of key email evidence.

26   He first summarizes the relevant background, then discusses the legal basis for this

27   request.

28   //

                                       4

**B.    Relevant Background**

As the Court is aware, eight of the nine Defendants filed a motion seeking authorization to issue a subpoena to the Navy compelling production of emails sent from, and received at, their Navy email accounts during the time period relevant to this case. *See, e.g.*, Docket ##162, 175, 180.  The Defendants sought that authorization after the prosecutors indicated they did not possess those emails and thus could/would not produce them.  This was surprising to defense counsel because aside from the anticipated testimony of two witnesses who are being offered liberty to say what the government wants (Leonard Francis and Jose Sanchez), the prosecution's case (at least against Mr. Dolan) is built almost entirely on emails sent to and from one of his Navy email accounts in the July 2007 to July 2009 time frame. The prosecutors claimed, however, that those emails were provided to them by Mr. Francis – their chief cooperator and culprit – from his/GDMA's computer(s).  When defense counsel asked the prosecution (1) what efforts it had made to find and secure a wider range of the emails sought by the Defendants (*e.g.*, searching computers, servers, archived data), (2) what additional efforts might be made in that regard, and (3) what the prospects of success might be, the prosecutors refused to answer.  It was under these circumstances that, on May 23, 2018, the Court authorized defense counsel to issue a subpoena to the Navy ordering production of emails from forty-nine Navy email accounts associated with the Defendants.  *See* Docket #178.

On September 13, 2018, after a good deal of delay, *see* docket ##180, 183, Craig Jensen, Associate General Counsel for the Navy, sent a letter to the Court stating that for emails sought from one of Mr. Dolan's email accounts, the Defendants needed to inquire of the Defense Logistics Agency, which is separate from the Navy. With respect to the other "48 accounts," Mr. Jensen wrote, "no responsive emails *are available*.  I have also consulted with the Naval Criminal Investigative Service (NCIS), as I am aware that NCIS collected documents during its investigative processes.  NCIS advised me that they do not possess any records responsive to the

1  subpoena *duces tecum* that have not otherwise been provided to the defense through
2  the discovery process."  9/13/18 Jensen Letter (Exhibit A) (emphasis added).

3        On September 18, 2018, counsel for Mr. Dolan sent USMC Lt. Col. Stephen
4  Stewart an email with questions related to Mr. Jensen's September 13, 2018 letter to
5  the Court.  That email was directed to Lt. Col. Stewart, a JAG attorney, because he
6  is the person that Mr. Dolan's counsel had dealt with up to that point regarding the
7  subpoena.  In his September 18 email, Mr. Dolan's counsel raised several questions,
8  including (1) what was meant by the statement that "no responsive emails are
9  *available*," (2) what measures were taken to locate the emails sought, and (2) what
10 additional measures might be taken by the Navy.  *See* 9/18/18 Burns Email (Exhibit
11 B).  Mr. Dolan's counsel also expressed concern about Mr. Jensen's evident
12 impression that the Navy could decide not to produce responsive materials based on
13 its belief that those materials had been produced by the prosecution "through the
14 discovery process." *See id.*  That position risks non-production of responsive emails,
15 and gives the Navy a ready-made excuse if it is later determined to have failed to
16 produce responsive emails (*i.e.*, "we thought the prosecution produced them").

17       On September 26, 2018, Mr. Jensen responded to the email/questions that Mr.
18 Dolan's counsel directed to Lt. Col. Stewart on September 18.  In his September 28
19 email response, Mr. Jensen said that his statement that "no responsive emails were
20 available" was "intended to convey that responsive emails could not be found."
21 9/26/18 Jensen Email (Exhibit B).  Mr. Jensen also reiterated that the Navy would not
22 produce some materials in its possession that were responsive to the subpoena
23 because it believed those materials were produced by the prosecution in discovery,
24 in a form that Mr. Jensen (inaccurately) believes is more practically useful for review
25 by the defense. *See id.*

26       On October 1, 2018, counsel for Mr. Dolan responded to Mr. Jensen and noted
27 that Mr. Jensen's September 26 email failed to address a key question, specifically:
28 whether additional measures could be taken by the Navy to locate the emails sought,

what measures those are, and what are the chances of success?  *See* 10/1/18 Burns Email (Exhibit B).  In that email, counsel for Mr. Dolan inquired if perhaps the emails were stored on digital tape, and concluded by stating, "At any rate, we, and presumably the Court, are keenly interested in what options may exist to retrieve some or all of the emails sought, because those are central to the defense in the criminal case."  *Id.*

On October 12, 2018, Mr. Jensen responded that the Navy's Pacific Fleet and USMC were asked to "investigate whether digital tapes with data responsive to your subpoena is available," and reported that "there are not digital tapes with responsive documents."  10/12/18 Jensen Email (Exhibit B).

On October 12, 2018, counsel for Mr. Dolan responded:

> I don't want to beat a dead horse here, but I am concerned that your answer is directed at an example I gave to illustrate what motivates, in part, our questions, rather than answering the key questions themselves, which are:  "Is it possible that additional measures could be taken; if so, what measures are those; and what chance is there that such measures would bear fruit?"

10/12/18 Burns Email (Exhibit B).  Mr. Jensen responded that same day, writing:

> The DON subject matter experts are unaware of any additional measures that would be able to successfully recover the data responsive to your subpoena.

10/12/18 Jensen Email (Exhibit B).

On December 13, 2018, the plot thickened.  That day, defense counsel received a discovery cover letter from government counsel, AUSA Brian Young, and the next day defense counsel received the subject discovery on an external hard drive.  In the cover letter, Mr. Young wrote that the government was producing "email files from the USS Blue Ridge."  *See* 12/13/18 Young Letter (Exhibit C).  As discussed below, the Blue Ridge is the ship on which the Seventh Fleet's command staff was stationed during the times relevant to this case.  A subsequent review of the emails mentioned, which were received by defense counsel on December 14, shows that they are to/from one of Defendant David Newland's Navy email accounts during the relevant time

period.  The government has not explained why these emails – which are clearly responsive to the Defendants' discovery requests made long ago, and the subpoena issued to the Navy – were not produced earlier.  Furthermore, based on Mr. Young's answers to defense counsel's questions about the December 13, 2018 production, and discovery produced by the government in response to those questions, it appears highly likely that the Navy/government have countless emails that are responsive to the Defendants' discovery requests and subpoena.  Those unproduced emails are evidently included in about two terabytes of data taken in March 2016 from approximately 100 computers located on the Blue Ridge.  It appears the government has not made much of an effort to determine what amongst that data is responsive to the Defendants' subpoena and discovery requests, nor produced all of the data in discovery to allow Defendants to search it.  On top of that, the government is evidently withholding responsive emails based on its view that those are classified, though (1) there are processes for dealing with classified email in discovery and (2) the Navy did not claim any emails were being withheld as classified.

**C.    The Court Should Hold An Evidentiary Hearing To Determine Key Facts Relevant To The Appropriate Remedy For The Government's Withholding, Or Destruction, Of Key Evidence**

Mr. Dolan anticipates that one or more of his co-Defendants will be filing a motion to compel production of the emails the Defendants have sought from the prosecutors and the Navy, including emails the prosecution is evidently withholding because they are purportedly classified.  Mr. Dolan joins that motion.

But it is also necessary to hold an evidentiary hearing to determine if there are additional, reasonable measures the Navy could take that might lead to locating, and production of, more of the emails sought.  If the final result is that emails key to Mr. Dolan's defense are not produced, Mr. Dolan will request that the Court impose an appropriate remedy for the government's destruction of that key evidence.  That remedy can be as stringent as dismissal of the indictment, or it can be a lesser remedy such as giving the jury a spoliation instruction, or perhaps precluding the government

from making certain arguments.  *See, e.g., United States v. Sivilla*, 714 F.3d 1168, 1172-74 (9th Cir. 2013); *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir.1993); *Arizona v. Youngblood*, 488 U.S. 51, 56–57 (1988); *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).  To determine the appropriate remedy, the Court needs to get a better handle on whether the emails can actually be recovered, and if not, the circumstances surrounding their destruction. *See Sivilla*, 714 F.3d at 1172-74.

Accordingly, Mr. Dolan requests that the Court hold an evidentiary hearing and that he be permitted to issue a testimonial subpoena, or subpoenas, to the government and/or Navy, for the person, or people, most knowledgeable about:  (1) the Navy's relevant email retention policy (or policies) and practices during the relevant time period; (2) the efforts the Navy, and the government, have taken to find and retrieve the emails sought, and when those efforts were made; (3) whether there are additional measures the Navy, or the government, could take to recover some or all of the emails sought, and how difficult or expensive it would be to pursue those measures; and (4) the circumstances surrounding the destruction of any or all of the emails sought.  Of course, it would be useful if the government would begin this process by providing the Court, and defense counsel, with a clear and thorough explanation on these subjects.  Unfortunately, the government's responses up to this point have ranged from silence to hard to decipher, rather than a forthright effort to make sure that the Defendants – who are presumed innocent and together have given centuries of service to this country – are provided with materials that are key to their defense.

## III.

### DISMISS COUNTS 1 AND 13 DUE TO FAILURE TO CHARGE WHEN MR. DOLAN JOINED CONSPIRACY, LIMIT GOVERNMENT'S CASE TO INDICTMENT, AND COMPEL BILL OF PARTICULARS

### A.    Introduction

Although the government has charged Mr. Dolan with an honest services wire fraud conspiracy, its case on all three counts charged against Mr. Dolan boils down

9

to a claim of quid pro quo bribery.[2] *See, e.g., McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016) ("Section 201 prohibits *quid pro quo* corruption – the exchange of a thing of value for an 'official act'"); *United States v. Garrido*, 713 F.3d 985, 996-97 (9th Cir. 2013); *United States v. Kincaid–Chauncey*, 556 F.3d 923, 943 (9th Cir. 2009).  But the indictment doesn't allege any point in time when Mr. Dolan and Mr. Francis allegedly made such a quid pro quo agreement.  Instead, as overt acts for the conspiracy charged in count one – which are incorporated into the two other counts in which Mr. Dolan is charged – the indictment alleges several things that Mr. Francis did for Mr. Dolan (alleged quids), and official acts that Mr. Dolan allegedly did for Mr. Francis/GDMA (quos).  *See* Indictment ¶¶36, 43, 60.  From this, the government evidently hopes the jury will infer that Mr. Dolan and Mr. Francis – or maybe someone other than Mr. Francis? – entered into an unlawful agreement at some unspecified time.

If the government is permitted to proceed with some or all of the counts in the indictment in which Mr. Dolan is named (*i.e.*, if the Court rejects the many dismissal motions set out in subsequent sections of this memorandum), Mr. Dolan requests that the Court enter an order indicating that at trial the government will be limited to proceeding on the quids and quos alleged in the indictment.  That is, Mr. Dolan asks the Court to preclude the government from seeing to introduce during trial evidence about any other alleged quids or quos involving Mr. Dolan.  Such an order is appropriate for at least two reasons:  (1) the quids and quos alleged in the indictment define the scope of the charges returned by the grand jury; and (2) there is a mountain of discovery in this case, and, particularly in light of the pre-indictment delay, it is essential that Mr. Dolan be given notice of the government's trial case well before

---

[2]  As will be discussed in greater detail below, there are two permissible theories for honest services wire fraud: bribery and kickbacks. *See Skilling v. United States*, 561 U.S. 358, 410 (2010).  Nothing in the indictment or discovery suggests, much less supports, a kickback theory of liability against Mr. Dolan.

trial so he can defend against the charges. These two legal points are addressed further below.

But first Mr. Dolan summarizes the quids and quos alleged in the indictment with respect to him. He does this so that: (1) the Court has a more clear view of the government's case with respect to him, which, given Mr. Dolan's logistical role in the Seventh Fleet, differs in important ways from the government's case with respect to the other Defendants; and (2) the government has ample opportunity to provide notice to Mr. Dolan if the government intends to proceed on quids and quos other than those discussed below.

**B.     The Indictment's Quid And Quo Allegations, And Motion To Dismiss All Counts Naming Mr. Dolan For Failure To Charge When He Allegedly Entered The Charged Conspiracies**

Before summarizing the quids and quos charged in the indictment with respect to Mr. Dolan, two additional, related points/motions bear making, with respect to the conspiracy counts (1 and 13) and the substantive count (5).

Neither of the conspiracy counts in which Mr. Dolan is charged (1 and 13) allege when Mr. Dolan entered the conspiratorial agreement. And it is evident from the discovery – and even the indictment – that the government does not assert that Mr. Dolan entered into a conspiratorial agreement with Mr. Francis, or anyone else, in or about February 2006 (the conspiracy start date alleged in the indictment). *See* Indictment at ¶¶ 32, 61 (Docket #1). This failure to charge the key fact underlying the conspiracy warrants dismissing those counts, and, of course, has a profound impact on the ability of Mr. Dolan to prepare his defense. *See, e.g., United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) ("an indictment must furnish the defendant with a sufficient description of the charges against [her] . . . to ensure that [she] is prosecuted on the basis of facts presented to the grand jury"); *United States v.*

//

//

//

11

1  *Cruikshank*, 92 U.S. 542, 559 (1875) ("the indictment should state the particulars").

2  Mr. Dolan moves to dismiss counts 1 and 13 on this basis.[3]

3      As for count 5 of the indictment, it purports to charge Mr. Dolan with a

4  substantive bribery offense under §201.   But it really re-charges the bribery

5  conspiracy as a single, substantive count, asserting that "in or about January 2008"

6  Mr. Dolan began to "engage[] in a course of conduct" amounting to bribery.  *See*

7  Indictment at ¶44 (Docket #1).  This suggests the government alleges that Mr. Dolan

8  joined the bribery conspiracy in or about January 2008, and indeed the first "quid"

9  alleged with respect to Mr. Dolan – that is, something of value that Mr. Francis

10  allegedly gave to Mr. Dolan – is in January 2018.   *See* Indictment at ¶36,

11  subparagraph A85 (Docket #1).  However, the first quo the indictment alleges with

12  respect to Mr. Dolan – that is, something Mr. Dolan allegedly did for Mr. Francis –

13  is in November 2018. *See* Indictment at ¶36, subparagraph A79 (Docket #1).  Given

14  the language of §201(b), it makes no sense that Mr. Dolan would corruptly undertake

15  an official act (or acts) on behalf of Mr. Francis if no corrupt agreement had already

16  been entered into.  (These circumstances also provide further support for dismissing

17  counts 1 and 13 based on the failure to allege when Mr. Dolan entered the

18  conspiracy.)

19      The nonsensical nature of this charge warrants dismissing count 5.  At the least,

20  the government should be required to state in a bill of particulars when Mr. Dolan

21  allegedly entered into a quid pro quo bribery agreement with Mr. Francis (or anyone

22  else).  That clarification is not only key to Mr. Dolan's preparing to defend against

23  the charges in this case, it is also essential to defining when the alleged substantive

24  bribery offense(s) occurred (discussed more in Section VII below, which raises a

25

26      [3] Among other things, because the indictment fails to charge when Mr. Dolan

27  entered into the conspiracy, it is impossible to identify on what the grand jury indicted, and for Mr. Dolan to later raise any sort of double jeopardy issue with

28  respect to his prosecution in this case.

motion to dismiss count 5 based on duplicity), and thus whether the charge is barred by the statute of limitations and venue is appropriate in this district.

Mr. Dolan now turns to summarizing the quids and quos alleged in the indictment with respect to him.

### 1.   Charged Quids – Things Mr. Francis Allegedly Did For Mr. Dolan

#### a.   Defendant Stephen Shedd Delivers Wine To Mr. Dolan

Indictment paragraph 36, subparagraph A85, alleges that on or about January 24, 2008, at Mr. Francis's behest, Defendant Stephen Shedd delivered a bottle of wine to Mr. Dolan.

#### b.   Hong Kong Port Visit – January 28 To February 1, 2008

During the relevant time period, senior staff officers for the Navy's Seventh Fleet were assigned to the USS Blue Ridge.  The Blue Ridge was usually docked at a naval base in Yokosuka, Japan, but it occasionally sailed throughout the Seventh Fleet's area of responsibility, stopping at various ports.  Most of the quids charged with respect to Mr. Dolan are based on Mr. Francis's allegedly incurring expenses on Mr. Dolan's behalf during those Blue Ridge port visits.

That begins with indictment paragraph 36, subparagraphs A86, A88-A90, which allege that Mr. Francis provided Mr. Dolan a hotel room and dinner during a January 28 to February 1, 2008 Blue Ridge port visit to Hong Kong.

#### c.   Bangkok Port Visit – May 1-4, 2008

Indictment paragraph 36, subparagraphs A103-A104, allege that Mr. Francis provided Mr. Dolan a hotel room and a prostitute during a May 1-4, 2008 Blue Ridge port visit to Bangkok, Thailand.

#### d.   Singapore Port Visit – May 6-9, 2008

Indictment paragraph 36, subparagraphs A106-A108, allege that Mr. Francis provided Mr. Dolan a hotel room, two dinners, and a prostitute during a May 6-9, 2008 Blue Ridge port visit to Singapore.

//

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### e.      Jakarta Port Visit – May 12-14, 2008

Indictment paragraph 36, subparagraphs A113-A114, allege that Mr. Francis provided Mr. Dolan a hotel room and a prostitute during a May 12-14, 2008 Blue Ridge port visit to Jakarta, Indonesia.

### f.      Kota Kinabalu Port Visit – May 17-20, 2008

Indictment paragraph 36, subparagraph A117, alleges that Mr. Francis provided Mr. Dolan a hotel room during a May 17-20, 2008 Blue Ridge port visit to Kota Kinabalu, Malaysia.

### g.      Manila Port Visit – May 22-25, 2008

Indictment paragraph 36, subparagraph A118, alleges that Mr. Francis provided Mr. Dolan a hotel room, a prostitute, and champagne during a May 22-25, 2008 Blue Ridge port visit to Manila, Philippines.

### h.      Hong Kong Port Visit – November 25-29, 2008

Indictment paragraph 36, subparagraphs A135-A136, A139-A140, allege that Mr. Francis provided Mr. Dolan dinner, a hotel room, and a prostitute during a November 25-29, 2008 Blue Ridge port visit to Hong Kong.

### i.      Christmas Gift – December 2008

Indictment paragraph 36, subparagraph A146, alleges that in December 2008, Mr. Francis gave Mr. Dolan a Christmas gift of beef, wine, cigars, and fruit.

### j.      Manila Port Visit – February 19-22, 2009

Indictment paragraph 36, subparagraphs A153, A155, allege that Mr. Francis provided Mr. Dolan meals, alcohol, a prostitute, and a hotel room during a February 19-22, 2009 Blue Ridge port visit to Manila, Philippines.

### k.      Bangkok Leave – July 1-3, 2009

Indictment paragraph 36, subparagraphs A161-A166, allege that while Mr. Dolan was on leave in Bangkok, Thailand from July 1-3, 2009, Mr. Francis provided Mr. Dolan a hotel room, and Mr. Francis gave Navy Lt. Commander Jose Sanchez cash, which Mr. Sanchez was supposed to use for his and Mr. Dolan's entertainment.

1

2

3

4

####       l.      Singapore Leave – July 17-24, 2009

Indictment paragraph 36, subparagraphs A161-A166, allege that while Mr. Dolan was on leave from July 17-24, 2009, Mr. Francis provided Mr. Dolan a hotel room in Singapore.

5

6

7

####     2.     Charged Quos – Things Mr. Dolan Allegedly Did For Mr. Francis

####       a.     Navy Payment To GDMA Related To USS Kitty Hawk's Cancelled Port Visit to Hong Kong In November 2007

8

9

10

11

12

13

14

15

In November 2007, a Hong Kong port visit by the USS Kitty Hawk was canceled due to the Chinese government's denying diplomatic clearance for the visit. Indictment paragraph 36, subparagraph A79, alleges that after that cancellation, Mr. Dolan assisted Mr. Francis with GDMA's efforts to collect from the Navy a "cancellation settlement," payment that GDMA was rightly due based on expenses it incurred in preparation for the Kitty Hawk's port visit.  Mr. Dolan is specifically alleged to have exerted influence on the Navy's Fleet Industrial Supply Center (FISC) contracting office in Yokosuka, Japan, to pay the fees.[4]

16

####       b.     Late Payments To GDMA By Submarine Group Seven

17

18

19

20

21

Indictment paragraph 36, subparagraph A81, alleges that in December 2007, Mr. Dolan assisted Mr. Francis by pressuring the Navy's Submarine Group 7 to pay overdue bills to GDMA for husbanding expenses related to two submarine port visits. Mr. Dolan allegedly provided this assistance to GDMA by emailing Sub-Group 7 personnel with an admonishment to pay the bills if they were due.

22

23

Indictment paragraph 36, subparagraph A99, alleges that in April 2008, Mr. Dolan again pressured Sub-Group 7 personnel, and personnel with the Commander

24

_____

25

26

27

28

[4]  Incidentally, it is hard to understand how this allegation, and the allegations in subsections (b) and (c) below (all of which are alleged to have occurred in 2007), can be considered "overt acts" by Mr. Dolan with respect to the bribery conspiracy, considering that count 5 alleges that Mr. Dolan did not begin his bribery "course of conduct" until January 2008.  Indictment at ¶44 (Docket #1).

of Submarine Forces Pacific, to timely pay bills for services GDMA rendered to submarines during port visits.

### c.   Pressure To Close Navy's Hong Kong Ship Support Office

Indictment paragraph 36, subparagraph A81, alleges that in December 2007, Mr. Dolan exerted pressure on Navy personnel to close, or reduce staffing, at the Navy's Hong Kong Ship Support Office (SSO).   The government's theory is evidently that Mr. Francis wanted that SSO closed, or personnel reduced, because that would lead to more business for GDMA, and/or reduced government oversight of GDMA in Hong Kong.

Similarly, indictment paragraph 36, subparagraph A141, alleges that on December 1, 2008, Mr. Dolan advised other Navy officials to close or realign the duties of the Hong Kong SSO.

### d.   Billing Dispute Between GDMA And Singapore FISC Office

Indictment paragraph 36, subparagraph 105, alleges that on May 5, 2008, Mr. Francis asked Mr. Dolan to get involved in a billing dispute between GDMA and the Navy's Singapore FISC office.   The indictment does not identify the nature of the billing dispute, nor does it say that Mr. Dolan took any action on Mr. Francis's behalf in this regard.   Based on the discovery produced, this allegation appears to relate to a billing dispute for husbanding services that GDMA provided in Samar, Phillipines.

### e.   Vladivostok, Russia, Port Visit

Indictment paragraph 36, subparagraph A119, alleges that in June 2008, Mr. Dolan exerted pressure on Navy officials to award GDMA a husbanding contract for a Navy port visit to Vladivostok, Russia.

### f.   Navy's Outstanding Payment Issues For Seventh Fleet Units

Indictment paragraph 36, subparagraph A127, alleges that in or about October 2008, Mr. Dolan offered to Mr. Francis to try to resolve any outstanding payment issues between GDMA and Seventh Fleet units.

//

1

### g.    Mr. Dolan's Exerting Contracting Influence For GDMA

Indictment paragraph 36, subparagraph A137, alleges – vaguely, and in the guise of quoting an email exchange between Mr. Francis and Navy Lt. Commander Jose Sanchez – that Mr. Dolan applied pressure on the Navy's FISC Yokosuka office to award contracts to GDMA, allegedly by "push[ing]" pending contract awards "to the next level."

### h.    Cooperation Afloat Readiness and Training (CARAT) Contract Influence

Indictment paragraph 36, subparagraph A147, alleges that in early January 2009, Mr. Dolan planned to influence the Navy's Pacific Fleet logistics chief (referred to as the N4 officer) to reject a proposal to award separate husbanding service contracts (as compared to a single contract for all services) for individual Navy Cooperation Afloat Readiness and Training (CARAT) exercise countries.  If that proposal were approved, it would unseat GDMA as the overall contractor for CARAT.

### i.    Contract Influence Regarding A Navy Ship Port Visit To Reunion Island

Indictment paragraph 36, subparagraph A165, alleges that on July 5, 2009, Mr. Dolan exerted influence on behalf of GDMA with respect to a Navy ship's port visit to Reunion Island.

### j.    Contract Influence Regarding CARAT Thailand Transportation Issues

Indictment paragraph 36, subparagraph A166, alleges that on July 7, 2009, Mr. Dolan indicated to Mr. Francis that he/Mr. Dolan would act on GDMA's behalf to deal with complaints about untimely transportation services provided by GDMA during the Navy's CARAT Thailand exercise.  The implication is that Mr. Dolan subsequently did so, but the indictment doesn't say that.

//

17

## C. The Government Should Be Limited To Proceeding On The Quid And Quo Allegations Found In The Indictment

The grand jury serves a limiting function, its limits are expressed on the face of the indictment, and the government may proceed only on the indictment's charges. *See Stirone v. United States*, 361 U.S. 212 (1960). An indictment is, therefore, not a blank check that allows "the prosecution free to roam at large – to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States*, 369 U.S. 749, 768 (1962). Accordingly, "an indictment must furnish the defendant with a sufficient description of the charges against [her] . . . to ensure that [she] is prosecuted on the basis of facts presented to the grand jury . . . ." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of the grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770.[5]

In light of these principles, the government should be limited to the quid pro quo allegations charged in the indictment with respect to Mr. Dolan. Those allegations define the case on which the grand jury indicted. The requested order is

---

[5] *See also United States v. Cruikshank*, 92 U.S. 542, 559 (1875) ("the indictment should state the particulars"); *Cecil*, 608 F.2d at 1296-97 (quoting *Russell* to the effect that government may not proceed on a trial theory "not found by, and perhaps not even presented to, the grand jury"); *Howard v. Daggett*, 526 F.2d 1388, 1389 (9th Cir. 1975) (holding that "allowing the jury to consider the evidence respecting [Mann Act violations with respect to two women not named in indictment] was to allow the jury to convict of a charge not brought by the grand jury"); *Jeffers v. United States*, 392 F.2d 749, 752 (9th Cir. 1968) (government may not rely on "fraudulent misrepresentation or scheme to defraud" not charged in indictment).

18

also appropriate given basic due process concerns, because (1) Mr. Dolan has to defend against charges based on events that occurred ten or more years ago, (2) a great deal of key evidence has been destroyed or is unavailable, and (3) the government has produced a mountain of discovery that Mr. Dolan must dig through.

If the government asserts that it should be permitted to proceed on quids and quos not alleged in the indictment, and the Court is inclined to accept that position, Mr. Dolan requests that the Court first order the government to produce grand jury transcripts supporting the conclusion that the grand jury intended to allow the government to proceed on such additional quids or quos.[6] *See* Fed. R. Crim. P. 6(e)(3)(E)(i) & (ii) (stating that court may order production of grand jury transcripts "preliminarily to or in conjunction with a judicial proceeding").

**D.    If The Government Is Permitted To Proceed With Respect To Quids And Quos Not Alleged In The Indictment, It Should Be Required To Identify And Describe Those In A Bill Of Particulars**

If the Court is disinclined to limit the government's case against Mr. Dolan to the quids and quos charged in the indictment, Mr. Dolan requests that the Court at least order the government to provide a bill of particulars indicating any additional quids and quos on which it intends to proceed at trial. *See* Fed. R. Crim. P. 7(f); *see also United States v. McCoy*, 492 F. Supp. 540, 545 (M.D. Fla. 1980) ("The defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment"); *United States v. Burgio*, 279 F. Supp. 843, 846 (S.D.N.Y. 1968) (holding government must identify in bill of particulars, among other things, "means employed to perpetrate the criminal deed . . . [and] identities of co-conspirators," and noting that "[s]ince defendant is presumed innocent . . . it cannot be assumed that he knows the particulars sought"); *United*

---

[6] Mr. Dolan notes, however, that this alternative request does not necessarily pass constitutional muster, because the Supreme Court's *Stirone* opinion makes clear that a court cannot know a grand jury would have indicted on a case theory not contained in the indictment.

*States v. Hughes*, 195 F. Supp. 795, 800 (S.D.N.Y. 1961) (requiring government to provide bill of particulars with specific description of omissions and misrepresentations).

The government may respond that Mr. Dolan can discern any quids and quos on which the government may proceed from the discovery. But (1) "[d]ue to the scale of this case, which involves a large number of [alleged] conspiratorial actors and criminal acts," (2) the mountain of discovery, and (3) that the relevant events with respect to Mr. Dolan occurred ten or more years ago, "there is a great potential for surprise at trial." *United States v. Bailey*, 689 F. Supp. 1463, 1473-74 (N.D. Ill. 1987). It is, therefore, "no solution to rely on the quantity of information disclosed [to defeat the need for a bill of particulars]; sometimes the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *see also United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (holding that though government produced voluminous discovery, there is "no good reason to require the defendant to engage in guesswork" to determine which transactions are allegedly fraudulent).

Accordingly, if the government is to be permitted to introduce evidence at trial with respect to quids and quos not charged in the indictment, Mr. Dolan requests that the government be required to provide, promptly, a bill of particulars detailing those quids and quos. Such an order is especially appropriate given the pre-indictment delay in this case, an issue that will be addressed next.

## IV.

### DISMISS BASED ON STATUTE OF LIMITATIONS AND CONSTITUTIONAL PRE-INDICTMENT DELAY

### A.    Introduction

The statute of limitations for all three offenses charged against Mr. Dolan is five years. *See* 18 U.S.C. §3282. Because the indictment was returned on March 9, 2017, it is untimely with respect to offenses that occurred before March 9, 2012. Mr.

Dolan left his posting with the Navy's Seventh Fleet in July 2009, and thereafter – even by the government's/indictment's telling – he had no further involvement with the alleged bribery conduct or conspiracies charged. Accordingly, to be timely the conspiracy charges in the indictment were required to be filed no later than July 2014, and the substantive charge (count 5) was required to be filed no later than January 2013, based on the January 2008 offense date stated in that count. Because all three counts were not timely filed under the applicable statute of limitations, they should be dismissed.[7]   Alternatively, all three counts should be dismissed due to constitutional pre-indictment delay.

Below, Mr. Dolan addresses separately the limitations arguments with respect to each count, then jointly addresses the constitutional pre-indictment delay argument with respect to all three counts.

**B.     Count 5 – The Substantive Bribery Charge**

As will be discussed further in Section VII below, count 5 charges an unknowable number of offenses, and therefore should be dismissed on duplicity grounds. However, if the Court were to construe count 5 to charge a single offense, the only sensible construction is that the charged offense was committed in January 2008, when, according to the indictment, Mr. Dolan allegedly agreed to accept benefits from Mr. Francis in exchange for "being influenced in the performance of official acts and in return for being induced to do and omit to do acts in violation of his official duties." Indictment at ¶44 (Docket #1). An offense under §201(b) is committed when a person enters into such an agreement, and thus, even construed most favorably to the government, the offense charged in count 5 was committed in or about January 2008. *See United States v. Morales*, 11 F.3d 915, 922 (9th Cir. 1993)

---

[7] The government may argue that the Wartime Suspension of Limitations Act (WSLA), 18 U.S.C. §3287, tolled the statute of limitations with respect to all of the indictment's counts. Mr. Dolan disputes that. But he does not address that argument here because he expects it will be countered in briefing filed by his co-Defendants.

1 (O'Scannlain, J., concurring); *see also United States v. Askia*, 893 F.3d 1110, 1118-
2 21 (8ᵗʰ Cir. 2018) (holding that federal funds bribery, 18 U.S.C. §666, is not a
3 continuing offense); *United States v. Yashar*, 166 F.3d 873, 879 (7ᵗʰ Cir. 1999)
4 ("Allowing the prosecution to extend the statute of limitations by charging a course
5 of [bribery] conduct would risk prosecutions based on stale facts and would not
6 encourage prompt investigation and prosecution of criminal activity. Those goals can
7 only be promoted by an interpretation that starts the limitations period when all
8 elements of the crime are first present"); *United States v. White*, 887 F.2d 267, 272
9 (D.C. Cir. 1989) (crime of bribery is complete "upon the public official's receipt or
10 agreement to receive payments for an official act"). That is outside the five-year
11 limitations period that applies, thus count 5 should be dismissed.

12     Incidentally, even if the Court were willing to speculate as to whether the grand
13 jury intended to charge a bribery offense that occurred some time after January 2008,
14 the indictment does not allege that Mr. Dolan engaged in any sort of conduct that
15 could amount to a bribery offense after March 9, 2012, which marks the beginning
16 of the five-year limitations window.

17 **C.    Count 1 – The Bribery Conspiracy Charge**

18     Generally, the statute of limitations for a conspiracy doesn't begin to run until
19 the last overt act occurs. *See, e.g., United States v. Wilbur*, 674 F.3d 1160, 1176 (9ᵗʰ
20 Cir. 2012). It appears the government will rely on this principle and assert that the
21 following overt acts charged in the indictment occurred within five years of the
22 indictment's return: (1) on June 12, 2012, Defendant David Lausman sent a cable to
23 Navy officials praising GDMA's performance; (2) on July 6, 2012, Mr. Francis asked
24 Mr. Lausman to send a letter to Navy officials praising GDMA's performance, and
25 on August 2, 2012 Mr. Lausman sent an "after action report" praising GDMA's
26 performance; (3) on August 11, 2012, Mr. Francis gave Mr. Lausman a fancy pen; (4)
27 in September 2013 and February 2014, Mr. Lausman did things "to conceal the nature
28 and extent" of his relationship with Mr. Francis; (5) in November 2013, Defendant

22

1   Bruce Loveless "made false statements to investigators" in "an effort to conceal the
2   nature and extent of his" relationship with Mr. Francis; and (6) in September 2013,
3   alleged conspirator Daniel Dusek "deleted the contents of his email account in an
4   effort to avoid detection by law enforcement."   Indictment at ¶36, subparagraphs
5   A213-A219 (Docket #1); *see also* Indictment at ¶17.

6       There are three reasons that these indictment allegations don't solve the
7   government's limitations problem, the first of which actually leads to an alternative
8   basis for dismissing count 1 (*i.e.*, duplicity).   Each of those reasons is addressed
9   below.

10      **1.    The Government Impermissibly – And Duplicitously – Charges A**
11      **Cover-Up As Part Of The Count 1 Conspiracy**

12      The allegations summarized in points 4-6 above (which are set out in
13  indictment paragraph 36, subparagraphs A216-A218) assert, at best for the
14  government, a conspiracy to cover-up criminal conduct.[8]  But it is impermissible for
15  the government to charge a coverup as part of the alleged conspiracy.  The Ninth
16  Circuit's opinion in *United States v. Gordon*, 844 F.2d 1397, 1400-01 (9th Cir. 1988),
17  is instructive.

18      There the government charged in a single count a conspiracy to defraud and to
19  cover up that fraud.  *See id.* at 1401.  The Ninth Circuit held that it could not "imply
20  a subsidiary conspiracy to conceal the [fraud]," and cited *Krulewitch v. United States*,
21  336 U.S. 440, 443 (1949).  In *Krulewitch*, and subsequently in *Grunewald v. United*
22  *States*, 353 U.S. 391 (1957), the Supreme Court noted that allowing the government
23  to claim a cover-up aspect of a conspiracy "would result in an indeterminate
24  //

25

26  _____

27      [8] In fact, the subject allegations arguably don't point to a conspiracy at all, but
    rather amount to claims that some individuals took steps to hide allegedly criminal
28  conduct.

23

extension of the statute of limitations." *Krulewitch*, 336 U.S. at 455-56.   The following excerpts from *Grunewald* are key:

> The crucial teaching of *Krulewitch* and *Lutwak* is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.
>
> * * *
>
> We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished.

353 U.S. at 401-02, 405.  The Ninth Circuit made this same point in *United States v. Green*, 594 F.2d 1227, 1229 (9th Cir. 1979):

> If the principal objects of a conspiracy have been accomplished before an act of concealment . . . then in all but the unusual case the conspiracy has ended before the cover-up begins, and one who conceals the completed crime is not by that act guilty of conspiracy to commit the substantive offense.

Accordingly, it is impermissibly duplicitous to charge in the same count a conspiracy to commit an offense and its cover-up, particularly because that would allow the government to obviate the statute of limitations.

In addition to the duplicity and statute of limitations problems with count 1, the charging of multiple  conspiracies creates a wide range of evidentiary and trial problems.   Ninth Circuit Judge Ely touched on some of those problems in his concurrence in *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979):

> [T]he prosecuting authorities unwisely adopted what may have appeared to be a simple expedient, i.e., the charge of a conspiracy that was too broad, sweeping together into a single prosecution all of the loose ends that . . . law enforcement investigators encountered during their investigation . . . .   The ablest trial judge that ever lived would have had difficulty in separating incriminating testimony that was admissible as to some of the accuseds and prejudicially inadmissible as to others.   If that is true, it is inconceivable to me that any jury composed of lay persons, however conscientious and intellectual in fields outside the law, and regardless of whatever cautionary instructions may have been given, could have completely disregarded inflammatory evidence, especially

24

1  hearsay evidence, that, as the case developed, was legally inadmissible
2  as against some of the accused.

3  *Id.* at 521-22 (Ely, J., concurring).

4       Accordingly, count 1's cover-up allegations don't help the government with
5  respect to the limitations issue.  Instead, those allegations lead to the conclusion that
6  the Court should dismiss count 1, and count 13, which incorporates the same
7  allegations, because those counts are duplicitous and the Court has now way of
8  knowing "whether the grand jury intended to charge both offenses, or whether it
9  would have charged either had it been aware that the offenses were distinct.  This
10  problem is particularly acute when the multiple offenses are conspiracies, because the
11  grand jury may have indicted one defendant on the basis of evidence admissible only
12  against the other defendants." *United States v. Cryan*, 490 F. Supp. 1234, 1239
13  (D.N.J. 1980); *see also United States v. Hardy*, 762 F. Supp. 1403, 1410 (D. Hawaii
14  1991) (exercising discretion and dismissing indictment count that charged two
15  conspiracies, rather than relying on specific unanimity jury instruction).

16       The government may argue that if the Court disregards the cover-up
17  allegations, count 1 was nonetheless timely filed because the overt act allegations
18  summarized in points 1-3 above (relating to Mr. Lausman's praising GDMA's
19  performance to Navy officials in June and July 2012) fall within the five-year window
20  (*i.e.*, after March 9, 2012).  Even setting aside the duplicity problem, there are two
21  answers to that argument, which are discussed in the next two sections of this
22  memorandum.

23      **2.**     **The Evidence Shows That Even If Mr. Dolan Were A Member Of**
                  **The Charged Conspiracy, He Abandoned That Role In July 2009,**
24                    **Thus His Offense Conduct Falls Outside The Limitations Period**

25       The government cannot rely on the July-August 2012 conduct related to Mr.
26  Lausman to render count 1 timely with respect to Mr. Dolan because even if Mr.
27  Dolan were *ever* part of a criminal conspiracy involving Mr. Francis/GDMA, he
28  abandoned that role in July 2009, when he left his job with the Navy's Seventh Fleet.

The Ninth Circuit's opinion in *United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992), is instructive.  In *Lothian*, the court dealt with withdrawal in the context of a defendant's participation in a scheme to defraud under the mail and wire fraud statutes.  But the court noted that withdrawal principles were, for all purposes relevant here, the same in the conspiracy context.  *See id.* at 1262-63.

In May 1985, the defendant in *Lothian* began working as the sales manager for a company called B.N. Goldberg & Associates (BNGA).  In that capacity, the defendant made false claims when soliciting investors for BNGA, and he trained other members of BNGA's sales staff to do the same.  *See id.* at 1259-60.  In December 1985, "Lothian resigned from BNGA, telling [his boss and BNGA's founder] that he was going to Europe to begin a new business venture."  *Id.* at 1260.  Although the fraud conspiracy charged in the case continued after Lothian left BNGA, the Ninth Circuit held that his having left BNGA constituted withdrawal from the scheme to defraud there.  *See id.* at 1264.

Similarly, even by the government's estimation, after Mr. Dolan left the Seventh Fleet in July 2009, he ceased to be involved in the alleged scheme/conspiracy to advance Mr. Francis's/GDMA's business interests.  And because, by the government's telling, Mr. Dolan withdrew from the alleged conspiracy at that time, count 1, which was filed nearly eight years later, is untimely and should be dismissed.

### 3. The Indictment And Evidence Do Not Support That Mr. Dolan Was Part Of Any Conspiracy Related To Mr. Lausman And Mr. Francis In June To August 2012

There is another reason that the government's reliance on Mr. Lausman's and Mr. Francis's June-August 2012 conduct does not solve its limitations problem with respect to Mr. Dolan.  That alleged conduct evidences, at most, a separate conspiracy between Mr. Lausman and Mr. Francis, which involved Mr. Lausman giving favorable reviews of GDMA's port services and Mr. Francis rewarding Mr. Lausman with a pen.  There is no credible way to claim that Mr. Dolan knew about, much less intended to advance, that alleged conspiracy/conduct, which occurred three years

26

1  after he left the Seventh Fleet.  Thus, Mr. Dolan cannot be held liable for that

2  conduct.  *See, e.g., United States v. Wilbur*, 674 F.3d 1160, 1177 (9th Cir. 2012);

3  *United States v. Medina*, 940 F.2d 1247, 1250 (9th Cir. 1991).  And that conduct may

4  not be relied on to solve the government's count 1 limitations problem with respect

5  to Mr. Dolan.

6  **D.    Count 13 – The Honest Services Wire Fraud Conspiracy Charge**

7       Count 13 of the indictment incorporates the overt act allegations for count 1,

8  and evidently relies on the same statute of limitations theories addressed above with

9  respect to count 1.  *See* Indictment at ¶¶36, 61 (Docket #1).  Accordingly, for the

10  reasons addressed in the preceding section of this memorandum, count 13 is also

11  barred by the statute of limitations, and duplicitous, and should be dismissed.

12  **E.    All Counts Should Be Dismissed Under The Fifth Amendment, Federal
13        Rule Of Criminal Procedure 48, And The Court's Supervisory Powers**

14       Even if the Court finds that the statute of limitations doesn't bar proceeding

15  against Mr. Dolan on counts 1, 5, and 13, it should nonetheless dismiss those counts

16  under the Fifth Amendment, Federal Rule of Criminal Procedure 48, and its

17  supervisory powers.

18       "The Fifth Amendment guarantees that defendants will not be denied due

19  process as a result of excessive preindictment delay."  *United States v. Sherlock*, 962

20  F.2d 1349, 1353 (9th Cir. 1989).  To establish a Fifth Amendment violation, a

21  defendant must show that he suffered "actual, non-speculative prejudice from the

22  delay and that the delay, when weighed against the government's reasons for it,

23  offends those fundamental conceptions of justice which lie at the base of our civil and

24  political institutions."  *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir.2001)

25  (internal quotation marks and citation omitted).  As mentioned above, and discussed

26  in previous filings with the Court, Mr. Dolan has suffered substantial prejudice

27  because key email evidence was destroyed in the ensuing years.

28  //

1      It is also appropriate for the Court to dismiss under Federal Rule of Criminal

2 Procedure 48(b), which allows a court to dismiss an indictment due to unnecessary

3 delay in presenting a charge to a grand jury.  Similarly, a court may dismiss an

4 indictment pursuant to its supervisory powers to implement a remedy for a statutory

5 or constitutional violation, to preserve judicial integrity, and/or to deter future

6 misconduct.  *See United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008).

7 Reckless conduct can support dismissal of an indictment with prejudice.  *See id.* at

8 1085.  The government's lengthy delay in this case, and destruction of key evidence,

9 supports dismissal on that basis.

10 **V.**

11 **DISMISS ALL COUNTS – INVALID CASE THEORY AND VAGUENESS**

12 **A.**    **Introduction**

13      The indictment relies on:  (1) a theory (or theories) of bribery liability under

14 §201(b)(2)(A) that is (or are) unconstitutionally vague and contrary to the Supreme

15 Court's construction of "official act" in *McDonnell v. United States*, 136 S. Ct. 2355

16 (2016); and (2) a theory (or theories) of liability under §201(b)(2)(C) that is

17 unconstitutionally vague.  Before addressing the specifics of these arguments, it is

18 useful to review *McDonnell*.

19 **B.**    ***McDonnell v. United States***

20      To establish a violation of §201(b)(2)(A), the government must show a public

21 official agreed to accept something of value in exchange for "being influenced in the

22 performance of any official act."  Section 201(a)(c) defines "official act:"

> 23/24/25 any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

26 The Court in *McDonnell* addressed "the proper interpretation of the term 'official

27 act.'"  136 S. Ct. at 2367.  The government advocated a broad interpretation that

28 could include "nearly any activity by a public official."  *Id.*  The Supreme Court

28

rejected that construction, holding:

> [A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" *must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee*. It must also be something *specific and focused* that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. *Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) – without more – does not fit that definition of "official act."*

*Id.* at 2371-72 (emphasis added). The Court arrived at this construction of "official act" based in part on the conclusion that adopting the government's broader reading would render the statute unconstitutionally vague. *See id.* at 2373.

As indicated above, Mr. Dolan is charged with conspiring to violate, and violating, sections 201(b)(2)(A) and (C). The honest services conspiracy charged necessarily also relies on the definition of bribery in §201(b)(2). *See McDonnell*, 136 S. Ct. at 2375; *United States v. Malkus*, 696 Fed. App'x 251 (9th Cir. 2017). The Supreme Court's opinion in *McDonnell* dealt with the interpretation of "official act," which, as indicated, is the key *actus reus* (or anticipated/agreed to *actus reus*) for offenses under (b)(2)(A). *McDonnell* did not address offenses under (b)(2)(C), for which the key *actus reus* (or anticipated/agreed to *actus reus*) is doing or omitting to do an act "in violation of the [defendant's] official duty." The meaning of "official duty" is every-bit as susceptible to an overbroad interpretation – and to vagueness concerns – as is the term "official act" in (b)(2)(A). And the vagueness problem is compounded with respect to (b)(2)(C) because Congress has not defined that phrase.

**C.  Invalidity Of Government's §201(b)(2) Theories/Charges, And Vagueness**

As indicated in the introduction above, the indictment relies on: (1) a theory (or theories) of liability for (b)(2)(A) that is/are contrary to the construction of "official act" in *McDonnell*, and present(s) constitutional vagueness problems; and

(2) a theory (or theories) of liability for (b)(2)(C) that raise constitutional vagueness problems.    Both    issues    are    addressed    below,    starting    with    the government's/indictment's (b)(2)(C) theory (or theories).

### 1.    The Government's §201(b)(2)(C) Theory (Or Theories)

All three counts that charge Mr. Dolan rely on "official duty" allegations, either explicitly or implicitly.  *See* Indictment at ¶¶32, 44, 61; *United States v. Malkus*, 696 Fed. App'x 251 (9th Cir. 2017).  And each of those counts incorporates a portion of the indictment titled "Official Duties," which contains the following, extremely broad assertions:

21.     Defendants, as officers in the U.S. Navy, had and were assigned *various official duties, including, but not limited to* those found in the United States Navy Regulations; Department of Defense Directive ("DoDD") 5500.07 (Standards of Conduct), DoDD 5500.07-R (Joint Ethics Regulations), and supplements thereto, including 5 C.F.R. Part 2625 (Standards of Ethical Conduct for Employees of the Executive Branch), and 5 C.F.R. Part 3601 (Supplemental Standards of Ethical Conduct for Employees of the Department of Defense); and Executive Order 12674 (Principles of Ethical Conduct).

22.     *Among many others*, the official duties of Officers in the U.S. Navy include (1) *acquainting themselves with, obeying and, so far as their authority extends, enforcing the laws, regulations, and orders* relating to the Department of the Navy; (2) *faithfully and truthfully discharging the duties of their offices* to the best of their ability in conformance with existing orders and regulations and their solemn profession of the oath of office (Article 1130); (3) requiring themselves to *show a good example of virtue, honor, patriotism, and subordination*; to be vigilant in inspecting the conduct of all persons who are placed under their command; to *guard against and suppress all dissolute and immoral practices*, *and to correct*, according to the laws and regulations of the U.S. Navy, all persons who are guilty of them; and take all necessary and proper measures under the laws, regulations and customs of the naval services, to *promote and safeguard the morale, the physical well-being and the general welfare of the officers and enlisted persons under their command or charge* (Article 1131); (4) *reporting as soon as possible to superior authority all offenses* under the Uniform Code of Military Justice ("UCMJ") which come under their observation (Article 1137); (5) complying with all directives issued by the Secretary of Defense and Secretary of the Navy regarding the Standards of Conduct and Government Ethics (Article 1110); and (6) reporting in writing any fraudulent, collusion, or improper conduct by a U.S. Navy contractor 2 (Article 1115).

23.     To perform their duties, the defendants all held "Secret" or "Top Secret" clearances as a prerequisite to handling various types of classified information.  Additional regulations prescribe the official

duties of U.S. Navy Officers in the handling of classified information, including DoDD 5200.02r, which requires among other duties that individuals having access to classified information *must promptly report to their security office*: any unauthorized disclosure to any person of classified information or of other information, disclosure of which is prohibited by Statute, Executive Order, or Regulation (C2.2.1.5); the disregard of public law, Statute, Executive Order, or Regulation (C2.2.1.7); *any criminal or dishonest conduct* (C2.2.1.8); *any acts of omission or commission that indicate poor judgment, unreliability, or untrustworthiness* (C2.2.1.9); *any vulnerability to coercion, influence, or pressure that may cause conduct contrary to the national interest* (C2.2.1.11); and *any acts of sexual misconduct or perversion* indicative of moral turpitude, poor judgment or lack of regard for the laws of society (C2.2.1.17). Co-workers shoulder an equal official duty to report when "they become aware of information with potentially serious security significance regarding someone with access to classified information" in a sensitive position (C9.1.5).

24. DoDD 5240.06 prescribes the official duties of Department of Defense personnel, including the defendants herein, related to counterintelligence awareness and reporting. In particular, DOD personnel must report certain enumerated contacts, activities, indicators, and behaviors as potential foreign intelligence entity threats against the DOD, its personnel, information, materiel, facilities, and activities or against U.S. national security. Mandatory reporting obligations inure to the following activities, among others: any improper handling or disclosure of classified information; attempts to entice co-workers into criminal situations that could lead to blackmail or extortion; attempts to entice DOD personnel into situations that could place them in a compromising position; and attempts to place DOD personnel under obligation through special treatment, favors, gifts, or money.

Indictment at ¶¶21-24 (Docket #1) (emphasis added); *see also* Indictment at ¶¶31, 43, 60.

The indictment's description of Mr. Dolan's official duties is not only amorphous, it covers almost anything, not just things related to his job (*e.g.*, "show[ing] a good example of virtue, honor, patriotism, and subordination"). This construction of "official duty" raises the same over-breadth/vagueness issues that motivated the Supreme Court's limiting construction of "official act" in *McDonnell*. And in this case the vagueness problem is particularly serious because while the government at least attempts to allege some official acts that Mr. Dolan took, or encouraged others to take, it makes no real effort to assert any concrete act that Mr. Dolan did, or did not do, in violation of his official duty.

//

Instead, the government seems to rely – largely or completely – on the theory that by failing to prevent and report others' improper conduct, Mr. Dolan omitted to do acts in violation of his official duty.  For example, paragraph 35 of the indictment, which is found in a portion of the indictment titled "Manner and Means of the Conspiracy," states:

> k.      In return for this stream of benefits from Francis, defendants were also induced to do and omit to do acts in violation of their *official duties, including, among many others*, receiving and *failing to report* others' receipt of things of value from a defense contractor, a prohibited source; *failing to guard against and suppress and correct others' dissolute and immoral practices*; *failing to promote and safeguard the morale, physical well-being, and general welfare of other U.S. Navy Officers*; engaging in and *failing to report violations of the UCMJ*; and *failing to report fraudulent and improper conduct* by a U.S. Navy contractor.

> l.      In return for this stream of benefits from Francis, defendants were also induced to do and omit to do acts in violation of their *official duties* with respect to classified information, *including*, engaging in and *failing to report acts of omission or commission that indicate poor judgment, unreliability, or untrustworthiness*; *failing to report vulnerability to coercion, influence, or pressure* that may cause conduct contrary to the national interests, and engaging in and *failing to report others' acts of sexual misconduct or perversion indicative of moral turpitude, poor judgment or lack of regard for the laws of society*.

> m.      In return for this stream of benefits from Francis, defendants were also induced to do and omit to do acts in violation of their official duties with respect to foreign intelligence threats, including engaging in and failing to report others' improper handling and disclosure of classified information; engaging in and *failing to report attempts to entice co-workers into criminal situations that could lead to blackmail or extortion*; *engaging in and failing to report attempts to entice DOD personnel into situations that could place them in a compromising position; and failing to report attempts to place DOD personnel under obligation through special treatment, favors, gifts, or money*.

Indictment at ¶¶35(k)-(m).

It seems unlikely that Congress intended the boundless definition of "official duties" on which the government's case, and the indictment, rely.  But if Congress did so intend, then the statute is unconstitutionally vague, at least as-applied in the manner involved here.  And because the grand jury returned the indictment based on such an unlawful or unconstitutional theory (or theories), all counts naming Mr. Dolan should be dismissed (or he should be dismissed from those counts).

### 2.   The Government's §201(b)(2)(A) Theory (Or Theories)

The same conclusion holds for the government's/indictment's (b)(2)(A) "official act" theory (or theories) of liability.  Presumably in light of *McDonnell*, in the indictment the government doesn't use the same sort of unbounded definition of "official act" as it does for "official duties."  It is nonetheless evident that the theory (or theories) the government/indictment relies on for §201(b)(2)(A) is/are contrary to the limitations placed on that phrase by *McDonnell*, and thus also run(s) into constitutional vagueness problems.

As indicated above, for an official's conduct to to amount to an "official act" under the statute, that conduct "must be specific and focused" and "must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *McDonnell*, 136 S. Ct. at 2371-72.  The indictment is rife with alleged "overt acts" by Mr. Dolan that fall far outside the scope of this definition, acts that were not even included in the summary of the quos above.  *See, e.g.*, Indictment at ¶36, subparagraphs A76, A123, A151 (Docket #1).  But many of the acts that the government, and indictment, clearly allege as quos don't qualify as "official acts" under §201(b)(2)(A).  For example, much of the government's/indictment's case against Mr. Dolan, from a quo perspective, is based on Mr. Dolan's telling other Navy officers to pay overdue bills, *if* those funds were owed.  *See, e.g.*, Indictment at ¶36, subparagraphs A79, A81, A99, A105, A127 (Docket #1).  That did not "involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee."  Thus, the government's case theory (or theories) is/are contrary to *McDonnell*.  Alternatively, section 201(b)(2)(A) is unconstitutionally vague as applied to Mr. Dolan – after all, what reasonable official would believe that encouraging other government officials

to pay overdue bills was an official act within the bribery statute?[9]  Either way, the indictment relies on an impermissible theory and all counts against Mr. Dolan should be dismissed (or he should be dismissed from those counts).

A final point bears making here.  The vagueness and overbreadth issues discussed above are compounded by the fact that the government doesn't rely on any sort of discrete bribe payment to establish an alleged bribery offense.  Instead, it relies on an alleged "stream of benefits."  Indictment at ¶¶33-35 (Docket #1).  Following *McDonnell*, it is evident that such a theory is impermissible.  For the same reasons that *McDonnell* held that the quo side of an alleged bribery "must be specific and focused," the quid side must also be limited, and clearly defined, rather than the government claiming there was an agreement to provide an amorphous "stream of benefits."  For example, a true bribery case involves something to the effect of, "If you pay me $5,000, I will award you a government contract."  On the other hand, it is impermissibly vague, and contrary to *McDonnell*, for the government to proceed on an amorphous theory that a defendant engaged in a "course of conduct" favoring someone in exchange for a "stream of benefits."  *See, e.g., United States v. Arthur*, 544 F.2d 730, 734 (4th Cir. 1976).  But that is exactly what the government does in the indictment.  *See, e.g.*, Indictment at ¶¶33-35, 44 (Docket #1).

Here, the amorphous "stream of benefits" allegations, in conjunction with the government's treatment of official acts and duties and the failure to charge when Mr.

---

[9] This problem is compounded by the broad way that the indictment describes the "official act" theory/theories.  For example, paragraph 33 of the indictment states, "It was an object of the conspiracy for the defendants to use their official positions and individual and combined influence in the U.S. Navy to perform official acts; to exert pressure on other officials to perform official acts; and to advocate before and advise other officials, knowing and intending that such advocacy and advice would form the basis for their official acts; all to advance GDMA's interests, as questions, matters, and controversies regarding GDMA's ship husbanding business were brought to the defendants' attention."

34

Dolan entered the alleged conspiracy, (1) leaves the indictment's fenceposts impossible to discern, and (2) allows the government to proceed without making a "specific and focused" bribery allegation against which Mr. Dolan can prepare to defend.  Put succinctly, the government seeks to proceed with a case theory that Mr. Dolan entered two functionally identical conspiracies at some unknown time, and in doing so he agreed to essentially do – or not do – whatever, in exchange for an unknown future stream of benefits.  Clarity in charging this is not; vague it is.

# VI.

## DISMISS ALL COUNTS – VENUE

All three counts charging Mr. Dolan should be dismissed due to lack of venue. To establish venue in the Southern District of California, the government is evidently relying on 18 U.S.C. §3238, which states:

> The trial of all offenses begun or committed upon the high seas, or elsewhere *out of the jurisdiction of any particular State or district*, shall be in the district in which the offender, or any one of two or more joint offenders, *is arrested* or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the *last known residence* of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

(Emphasis added.)  Parroting this language, the indictment asserts that (1) the offenses charged occurred "outside the jurisdiction of any particular district," (2) Leonard Francis was arrested in the Southern District of California, and (3) Defendant Bruce Loveless's last known address was in San Diego.  *See* Indictment at ¶¶9, 30, 32, 36 (Docket #1).  However, section 3283 only applies if the charged offense was not committed, in any part, in any district.  *See United States v. Greenhut*, 2016 WL 6652681, *8 (N.D. Cal. 2016); *United States v. McVicker*, 979 F. Supp. 2d 1154, 1178 (D. Ore. 2013).  Here, the indictment alleges, among other things, that charged conspirators/joint offenders Enrico DeGuzman and Stephen Shedd committed overt acts related to the count 1 bribery conspiracy in Tennessee and Hawaii, *see* Indictment ¶¶6, 12, and 36 (subparagraphs A68, A128-132, A134, A138,

35

1  A144, A148, A150, A157, A159, A164, A167, A171, A183, A186), and those

2  allegations are incorporated into the other counts charged against Mr. Dolan. *See*

3  Indictment at ¶¶43, 60 (Docket #1). Accordingly, venue, and jurisdiction, over the

4  prosecution of those three counts lies in the District of Hawaii or the Western District

5  of Tennessee. *See, e.g., United States v. Gonzalez*, 683 F.3d 1221, 1224 (9th Cir.

6  2012) (noting that venue lies where any overt act occurred); *cf. United States v.*

7  *Coates*, 949 F.2d 104, 106 (4th Cir.1991) (government may not manufacture

8  jurisdiction); *United States v. Archer*, 486 F.2d 670 (2d Cir.1973) (same).

9  　　　　The government's more fundamental venue problem is Article III, section 2,

10  clause 3 of the Constitution, which states:

11  　　　　The Trial of all Crimes, except in Cases of Impeachment, shall be by
12  　　　　Jury; and such Trial shall be held in the State where the said Crimes
　　　　　shall have been committed; but *when not committed within any State,*
13  　　　　the Trial shall be at such Place or Places as the Congress may by Law
　　　　　have directed.

14  (Emphasis added.) Because the crimes charged are alleged to have been committed

15  in part within two states – Hawaii and Tennessee – venue lies in those places, and the

16  Constitutional provision quoted controls. *See also* U.S. Const., Amend VI ("the

17  accused shall enjoy the right to a speedy and public trial, by an impartial jury of the

18  State and district wherein the crime shall have been committed"). Accordingly, venue

19  does not lie in the Southern District of California with respect to the charges against

20  Mr. Dolan, and those counts should be dismissed.

21  　　　　There are two additional points that bear making, with respect to counts 5 and

22  13.

23  　　　　First, even if the arguments set out above did not preclude the government from

24  relying on §3238 here, jurisdiction still would not lie in the Southern District of

25  California with respect to count 5. That is because count 5 charges solely Mr. Dolan,

26  not any co-offenders. Accordingly, at the very least count 5 should be dismissed due

27  to improper venue.

28  //

Second, with respect to count 13, it is evident that venue must lie within some district in the United States because in that count the indictment alleges that "for the purpose of executing [the alleged] scheme, defendants and their conspirators transmitted and caused to be transmitted . . . wire communication[s] in interstate . . . commerce . . . ."[10] Indictment at ¶61 (Docket #1). This also provides further support for the conclusion that overt acts involved in the conspiracy charged in count 1 – which is essentially the same as for count 13 (and count 13 incorporates the overt acts alleged in count 1) – occurred within one or more judicial districts.

## VII.

### DISMISS COUNT 5 – DUPLICITY AND IMPROPER CHARGE AS CONTINUING OFFENSE

Count 5 should be dismissed for two related reasons: it is duplicitous and improperly charges bribery as a continuing offense.

"An indictment is duplicitous where a single count joins two or more distinct and separate offenses." *See United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976). Combining offenses in one count creates several problems:

(1) The jury in a general verdict cannot make a finding on each offense; (2) A defendant may not have proper notice of the charges against him; (3) It may be difficult if not impossible to make correct evidentiary rulings; (4) A jury may convict a defendant without unanimously agreeing on the same offense; (5) A defendant may be prejudiced in a subsequent double jeopardy defense; (6) A defendant may be prejudiced at sentencing; and (7) A defendant may face limited review on appeal.

*United States v. Gray*, 101 F. Supp. 2d 580, 583 (E.D. Tenn. 2000); *see also United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985). Here, count 5 of the indictment is duplicitous because it charges violations of both 18 U.S.C. §201(b)(2)(A) and (C). *See* Indictment at ¶44 (Docket #1). Because those two

---

[10]   Count 13's reference to "foreign commerce" also, almost certainly, implicates (and must implicate) one or more judicial districts, rather than commerce completely unconnected with the United States.

37

statutory provisions are contained in different sub-sections, and state different elements, it is evident that they define separate offenses, rather than different means of committing the same offense.[11]  *See, e.g., Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

A second, related problem is that count 5 improperly charges bribery as a continuing offense, spanning over five-and-half years.  *See, e.g., Toussie v. United States*, 397 U.S. 112 (1970).  As a consequence, count 5 encompasses an un-specified number of bribery offenses under both §201(b)(2)(A) and (C).  Amongst many problems this creates, it is impossible, for each such offense, to assess (1) if the offense was committed within the statute of limitations period, (2) where venue lies, and (3) if the Court has jurisdiction over the offense.

The Ninth Circuit has held that, at least in some circumstances, there are steps short of dismissal through which a duplicitous indictment may be remedied:

> Nevertheless, "[t]he rules about . . . duplicity are pleading rules, the violation of which is not fatal to an indictment.  Defendant's remedy is to move to require the prosecution to elect . . . the charge within the count upon which it will rely.  Additionally, a duplicitous . . . indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment."  *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.1981).  In other words, a defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed.

*United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001).  However, Mr. Dolan does not believe count 5 can be remedied in any of these manners because it

//

---

[11]  Section 201(b)(2)'s prohibitions on "demand[ing], seek[ing], receiv[ing], accept[ing], or agree[ing] to receive" a bribe also arguably state multiple offenses, further compounding the government's duplicitous charging. *See, e.g., United States v. Michelson*, 165 F.2d 732, 733 (2d Cir. 1948) (stating that "offering" and "giving" a bribe "are two distinct offenses even when parts of a single transaction").

is impossible from that charge to identify any single offense on which the grand jury indicted, and it is also impossible to assess limitations, venue, and jurisdiction issues.

The government may argue that the duplicity problem is more circumscribed than set out above, relying on *United States v. Morales*, 11 F.3d 915 (9th Cir. 1993), to assert that the bribery offenses in §201(b)(2) are continuing offenses. However, *Morales* dealt with an *ex post facto* claim regarding application of a Sentencing Guidelines adjustment. In that context, the majority opinion stated, "The doctrine of 'continuing offense' has no applicability to a situation like this where the charged criminal conduct itself extends over a period of time." *Id.* at 918. Touching on the duplicity issue, the majority said:

> We thus deal with a prosecution that charged and proved in one count a scheme that extended over a period of time. The government probably could have divided the scheme into multiple counts, but the form of the indictment has never been an issue in this case, and the sentence did not violate ex post facto principles.

*Id.* Here, the form of the indictment – that is, the duplicitous charging – is at issue. And as Judge O'Scannlain explained convincingly in his concurrence/dissent in *Morales*, the substantive offenses in §201(b)(2) are not continuing offenses. Instead, those offenses are complete once a public official "demands, seeks, receives, accepts, or agrees to receive or accept anything of value." 18 U.S.C. §201(b)(2). "All these words describe instantaneous acts, not courses of conduct," thus the offenses described in (b)(2) are complete when any such act occurs. *Morales*, 11 F.3d at 922 (O'Scannlain, J., concurring); *see also United States v. Askia*, 893 F.3d 1110, 1118-21 (8th Cir. 2018) (holding that federal funds bribery, 18 U.S.C. §666, is not a continuing offense); *United States v. Yashar*, 166 F.3d 873, 879 (7th Cir. 1999) ("Allowing the prosecution to extend the statute of limitations by charging a course of [bribery] conduct would risk prosecutions based on stale facts and would not encourage prompt investigation and prosecution of criminal activity. Those goals can only be promoted by an interpretation that starts the limitations period when all elements of the crime are first present"); *United States v. White*, 887 F.2d 267, 272

1   (D.C. Cir. 1989) (crime of bribery is complete "upon the public official's receipt or

2   agreement to receive payments for an official act").

3           Accordingly, count 5 should be dismissed for the reasons set out above.

4                                          **VIII.**

5   **DISMISS COUNT 13 – IMPROPER CONCEALMENT-OF-MATERIAL-INFORMATION THEORY, AND NO**

6   **FACTS SUPPORTING KICKBACK THEORY**

7           Count 13 charges all of the Defendants with honest services wire fraud, and

8   alleges that the Defendants committed that offense "through bribery and kickbacks

9   *and the concealment of material information* . . . ."  Indictment at ¶61 (Docket #1).

10  In *Skilling v. United States*, 561 U.S. 358 (2010), the Supreme Court dealt with a

11  vagueness challenge to the honest services fraud theory, which is codified in 18

12  U.S.C. §1346.   Section 1346 says little, and nothing about the reach of honest

13  services liability.   The Court in *Skilling*, however, held §1346 is not void for

14  vagueness, but only to the extent that the statute is limited to honest services

15  prosecutions based on bribery or kickbacks.   The Court specifically held that the

16  government cannot proceed under §1346 based on a theory that a defendant deprived

17  another of honest services by concealing material information. *See Skilling*, 561 U.S.

18  at 410 ("we conclude that a reasonable limiting construction of §1346 must exclude"

19  cases alleging "concealment of material information") (quotation omitted).  Because

20  the government relied on this impermissible theory in obtaining the indictment, count

21  13 should be dismissed.

22          Furthermore, there are no facts alleged that support a kickback theory of

23  liability for Mr. Dolan, nor is any such theory supported by the government-produced

24  discovery.  Presumably this is why the government only charged a substantive bribery

25  offense and conspiracy, and did not charge corresponding charges under the Anti-

26  Kickback Act, 41 U.S.C. §8701, *et seq.*  This circumstance also supports dismissal

27  of count 5.

28  //

40

1

## IX.

2

## DISMISS COUNTS 1 AND 5 – MULTIPLICITY

3      As mentioned above:  (1) *Skilling* holds that the government may proceed with

4  honest services prosecutions only if the theory is based on bribery or a kickback; (2)

5  the indictment does not allege, and the discovery does not support, any sort of

6  kickback theory involving Mr. Dolan; and (3) *McDonnell* makes clear that honest

7  services bribery is based on the definition of bribery in 18 U.S.C. §201.  *See United*

8  *States v. Malkus*, 696 Fed. App'x 251 (9th Cir. 2017).  In light of these principles, and

9  that both conspiracies counts that charge Mr. Dolan rely on identical fact allegations,

10  it is evident that the honest services bribery conspiracy charged in count 13 is

11  identical to the bribery conspiracy charged in count 1 – the only difference is that the

12  count 13 honest services conspiracy also implicates use of wires.  The count 1

13  conspiracy is, thus, essentially a lesser included offense of the count 13 conspiracy.

14      Accordingly, the two counts are multiplicitous and count 1 should be

15  dismissed.  *See United States v. Gaddis,* 424 U.S. 544 (1976).  A multiplicitous

16  indictment is one that charges in separate counts two or more crimes when, in fact and

17  law, only one crime has been committed.  *See United States v. Nakashian,* 820 F.2d

18  549, 551 (2d Cir. 1987).  The test for determining whether a charge is multiplicitous

19  is whether congress intended to authorize separate punishments for the conduct in

20  question.  *See Whalen v. United States,* 445 U.S. 684, 688–89 (1980); *Heflin v.*

21  *United States,* 358 U.S. 415, 419–20 (1959).  Here, there is no reason to believe that

22  Congress intended Mr. Dolan to be subjected to dual punishment for the identical

23  alleged bribery conspiracies.

24      Furthermore, as discussed above, the government has charged the substantive

25  bribery in count 5 as essentially an on-going bribery conspiracy, involving the same

26  facts.  That means it, too, is multiplicitous of count 13.  *See also United States v.*

27  *Finazzo*, 407 F. Supp. 1127, 1130-31 (E.D. Mich. 1975) (discussing Wharton's Rule,

28  which prohibits charging a conspiracy to commit a substantive offense that requires

1    agreement of two or more people); *United States v. Cogan*, 266 F. Supp. 374, 376-77

2    (S.D.N.Y. 1967) (same).  Accordingly, if count 5 is not dismissed for the pleading

3    defects discussed above, it should be dismissed because it is multiplicitous.

4                                              **X.**

5              **DISMISS COUNT 13 – FAILURE TO PLEAD ELEMENTS**
                      **AND INVALID OFFENSE THEORIES**

6

7    **A.    Introduction**

8           An indictment must allege the elements of the offense(s) charged, including

9    judicially implied elements.  *See, e.g., Stirone v. United States*, 361 U.S. 212, 217

10   (1960); *United States v. Hess*, 124 U.S. 483 (1888); *United States v. Carll*, 105 U.S.

11   611 (1881); *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (failure to

12   charge element is structural error, thus not subject to plain error review); *United*

13   *States v. DuBo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (implied element must be charged

14   in indictment).  "If an element is necessary to convict, it is also necessary to indict,

15   because elements of a crime do not change as criminal proceedings progress." *United*

16   *States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002).  And to convict of a conspiracy

17   offense, and thus to charge a conspiracy offense, there must be an allegation/finding

18   with respect to the elements of the object of the conspiracy.  *See United States v.*

19   *Alghazouli*, 517 F.3d 1179, 1189 (9th Cir. 2008).

20          In light of these legal principles, count 13 should be dismissed because it fails

21   to charge:  (1) that Mr. Dolan intended to harm the alleged victim, the Navy; (2) that

22   the Defendants agreed to use wires to effectuate the alleged scheme; and (3) the

23   elements of bribery under §201(b)(2)(A) and (C).  Each argument is discussed

24   separately below.[12]

25

26   _____

27          [12] Because the issues raised in this regard (and in the preceding sections of this
     memorandum) are purely legal, the Court may dismiss pursuant to Federal Rule of

28   Criminal Procedure 12(b)(2).  *See, e.g., United States v. Phillips*, 367 F.3d 846, 855

                                              42

**B.    Count 13 Fails To Charge An Intent To Harm**

In *Neder v. United States*, 527 U.S. 1, 21-25 (1999), the Supreme Court made clear that, absent explicit contrary Congressional intent, the elements of common law fraud are encompassed in "defraud," as used in the mail and wire fraud statutes. Amongst the elements of common law fraud is that a victim sustain loss or damage – that is, be harmed. *See In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996). Of course, the wire fraud statute here deals with a "scheme to defraud," and thus it is not necessary that the fraud be completed. Commensurate with that, the government need not show a victim actually suffered damages, or harm. *See Neder*, 527 U.S. at 25 (statutes "prohibit[] a 'scheme to defraud,' rather than a completed fraud"). But the government must still show the defendant *intended* to harm a victim.[13] This is consistent with the requirement that "the government must show a specific intent to defraud." *United States v. Beecroft*, 608 F.2d 753, 757 (1979).

The case law is replete with holdings requiring the government to show a defendant intended harm. *See, e.g., United States v. Brown*, 459 F.3d 509, 519 (5th Cir. 2006); *United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996); *United States v. Sawyer*, 85 F.3d 713, 729 n.12 (1st Cir. 1996); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994); *United States v. Wallach*, 935 F.3d 445, 461 (2d Cir. 1991). The Fifth Circuit's opinion in *Brown* is particularly instructive. In that case, the government alleged Enron and Merrill Lynch employees "parked" Enron assets in a Merrill Lynch account – that is, engaged in a sham sale – to inflate Enron's year-end earnings. *Brown*, 459 F.3d at 513. The Fifth Circuit acknowledged the

---

& n.25 (9th Cir. 2004); *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) (dismissing pursuant to Rule 12(b)(2) because indictment "fails to state an offense [because] facts alleged . . . fall beyond the scope of the relevant criminal statute").

[13] "A mere showing of harm . . . is insufficient to establish *intent* to harm." *United States v. Chandler*, 98 F.3d 711, 716 (9th Cir. 1996).

dishonesty of the scheme. *See id.* at 522. Nevertheless, the court held the defendants' actions did not constitute honest services fraud because they acted consistently with their employer's interests (*i.e.*, to "raise" year-end earnings). *Id.* at 522. That is, there is no honest services fraud when an "employee perceives his pursuit of [a] goal as mutually benefitting him and his employer . . . ." *Id.* Accordingly, there is no honest services fraud without an intent to harm, and there is no intent to harm if a defendant acts consistently with his employer's wishes.

Ninth Circuit case law also establishes that to show an intent to defraud, the government must show both intent to harm and to seek private gain. In *United States v. Thomas*, 32 F.3d 418, 419 (9th Cir. 1994), the court reversed a conviction in a case in which a produce seller sometimes overstated, and sometimes understated, prices to customers. There was no dispute that when the defendant overstated prices, he did so for the purpose of private gain. Nevertheless, the defendant contended that over the long-term prices were averaged, such that he did not harm the alleged victims. The court held this was a valid defense with respect to the defendant's intent to harm (or cheat) the alleged victims. *See id.* at 420-21. Thus, the court effectively held the government had to establish not only private gain (the higher prices charged), but also an intent to harm.

Nowhere in count 13 does the government charge that Mr. Dolan acted with the intent to harm the alleged victim, the United States Navy. And, indeed, there is no evidence he acted with such intent. Accordingly, count 13 should be dismissed.

## C.   Count 13 Fails To Allege An Agreement To Use Wires

Use of a wire (or wires) is the gravamen of the wire fraud offense that is the alleged object of the count 13 conspiracy – without use of the wires, there is no federal offense. Despite this, the count 13 conspiracy charge does not allege an agreement to use wires. *See* Indictment at ¶61 (Docket #1).

A central element of conspiracy is that a defendant intend to commit a crime charged in the indictment. *See, e.g.*, Ninth Cir. Model Jury Instr. 8.20. To intend to

commit wire fraud, a person must intend that wires be used; otherwise, all that is charged is an intent to defraud, which is not a federal crime. *Stokes v. United States*, 157 U.S. 187, 188 (1895), is directly on point.  That case addressed a predecessor to 18 U.S.C. §1341, the mail fraud statute, and held that for a mail fraud conspiracy "three matters must be charged in the indictment and established by the evidence," including that the defendants "must have *intended* to effect this scheme by opening, or intending to open, correspondence with some other person through the post-office establishment . . . ." (Emphasis added.)  Accordingly, although the government may not have to show intended use of the mails or wires for a substantive mail or wire fraud offense, it must do so for a conspiracy charge:

> [W]here a person is charged with a substantive violation of §1341 or §1343 it is not necessary for the government to prove that he intended to use the mails or other communications media in furtherance of his fraudulent scheme; it is sufficient if they were in fact used; but where the charge is conspiracy to violate one of the statutes, the government must also show that the scheme contemplated the use of the medium in question.

*United States v. Donahue*, 539 F.2d 1131, 1135 (8th Cir. 1976).  The Fifth Circuit arrived at the same common-sense holding:

> Where a conspiracy to commit the offense is charged, there is a third element, not involved in the commission of the substantive offense:  An intent to use the mails in execution or attempted execution of the fraudulent scheme.

*Weiss v. United States*, 122 F.2d 675, 680 (5th Cir. 1941); *see also Abbott v. United States*, 239 F.2d 310, 314 (5th Cir. 1956) ("conspiracy to use the mails to defraud which, being an agreement, calls for proof of an intended use of the mails").

Because the conspiracy charged in count 13 does not charge that the Defendants agreed to use the wires to execute the alleged scheme, it should be dismissed.

**D.    Count 13 Fails To Allege Elements Of Bribery**

As discussed above, honest services bribery is defined by relying on the elements of bribery in 18 U.S.C. §201(b).  *See Malkus*, 696 Fed. App'x 251 (9th Cir.

2017); *McDonnell*, 136 S. Ct. at 2375.  Count 13, however, does not allege the elements of bribery, and therefore should be dismissed.

## XI.

### DISMISS COUNT 1 – INVALID OFFENSE THEORIES RELATING TO §201(b)(1) AND CONSPIRING TO AID AND ABET BRIBERY

Count 1 should be dismissed because it charges invalid theories (1) of liability under §201(b)(1), and (2) of conspiring to aid and abet bribery.  Relevant to these motions, count 1 charges:

> (1) the defendants and others knowingly agreed that, in return for the defendants being influenced in the performance of official acts and being induced to do and omit to do acts in violation of their official duties, and *aiding and abetting other defendants to be so influenced and induced,* (a) *Francis and others would directly and indirectly, corruptly give, offer, and promise* things of value to the defendants, collectively and individually, including meals, entertainment, travel and hotel expenses, gifts, cash, and the services of prostitutes, and (b) the defendants, collectively and individually, would directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept these things of value personally and for other persons; and (2) the defendants and others took overt acts in furtherance of this conspiracy, in violation of Title 18, United States Code, *Section 201(b)(2)(A) and (C)* , and *Title 18, United States Code, Section 2*.

Indictment at ¶32 (emphasis added) (Docket #1).  The quoted language is not only confusing, the emphasized parts raise (at least) the following issues.

First, the language regarding Mr. Francis giving, offering, *et cetera*, is evidently taken from §201(b)(1).  But the offense(s) in (b)(1) are not charged as an object of the conspiracy.  Aside from that basic pleading defect, the indictment's allegation amounts to asserting that the Defendants conspired to bribe themselves, a logical impossibility.  Furthermore, given the ordering of the allegations, count 1 effectively charges that the Defendants agreed that in return for their official-related conduct, "*Francis and others would directly and indirectly, corruptly give, offer, and promise* things of value to the defendants . . . ."  That also makes no sense – how could they agree about what Mr. Francis and others would corruptly give, offer, *et cetera*?

This mess is further complicated by the allegation that the Defendants conspired to aid and abet robbery.  As an initial matter, the aiding and abetting provision in 18 U.S.C. §2(a) does not provide for conspiracy liability, and the government may not import such liability into the statute.  *See, e.g., United States v. Kuok*, 671 F.3d 931, 940-42 (9th Cir. 2012) (holding that attempt provision could not be incorporated into 18 U.S.C. §2(b)); *see also United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 178 (6th Cir. 1993) ("The problem here is how to logically combine the crime of conspiracy, which does not require proof of the underlying substantive offense, with an aiding and abetting offense, which doesn't exist without one"); *United States v. Bosch*, 914 F.2d 1239, 1241 (9th Cir. 1990) ("[a] defendant cannot be convicted of aiding and abetting absent proof that the underlying offense was committed").  And the conspiracy to aid and abet theory is a particularly bad fit here in light of what is set out in the preceding paragraph – that is, count 1 throws a nonsensical aiding and abetting allegation into the midst of a nonsensical conspiracy allegation.

In light of these defects in pleading, it is impossible to know whether the grand jury returned a valid charge, and count 1 should be dismissed.  Furthermore, because these defects affect the closely related conspiracy charge in count 13, that count should also be dismissed.  To the extent there is any question about that, the Court should order production of the relevant portions of the grand jury transcript, most importantly portions during which the grand jurors were instructed on the law and the charges.  *See* Fed. R. Crim. P. 6(e)(3)(E)(i) & (ii) (stating that court may order production of grand jury transcripts "preliminarily to or in conjunction with a judicial proceeding").

## XII.

## SEVER DEFENDANTS' CASES FOR TRIAL

Based on the indictment and discovery produced so far, there are multiple bases for severing the Defendants' cases for trial, including:  (1) issues related to the

government's introducing evidence of a Defendant's statements to agents at trial, when that Defendant does not testify and thus is not available for cross examination, *see, e.g., Bruton v. United States*, 391 U.S. 123 (1968); (2) antagonistic defenses, *see, e.g., United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991); and (3) issues relating to the government's having really charged more than one conspiracy in each of the conspiracy counts, and the evidence against some Defendants being entirely distinct from the evidence against other Defendants.  There are also practical and due process concerns with trying nine Defendants together – among other things, it asks too much for a jury to be able to keep track of the evidence related to each Defendant, the various limiting instructions, *et cetera*.

Given these circumstances, trial severance may be necessary, at least for groups of Defendants.  And it may be appropriate for the Court to hold Mr. Dolan's trial separately from the other Defendants, because his logistical role in the Navy's Seventh Fleet puts him in a very different circumstance than the other Defendants. But it is premature to analyze severance given (1) the massive amounts of discovery, (2) the amorphous claims in the indictment, and (3) the fact that this Court's treatment of other pre-trial motions, and other developments, may obviate the need for a severance order.  Accordingly, Mr. Dolan moves for severance at this time but requests that resolution of that issue be deferred until closer to trial.

## XIII.

## COMPEL IDENTIFICATION OF *BRADY* MATERIAL

The government has provided a massive amount of discovery, but no indication of where in that mountain of material the Defendants can find *Brady* material.  Mr. Dolan therefore requests that the Court compel the government to indicate the materials that the government has identified as falling under *Brady*'s umbrella.

*Brady* places an affirmative obligation on prosecutors to learn of favorable evidence, including "to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Only then can the prosecutor assess what information must be produced pursuant to *Brady*. *See United States v. Hsia*, 24 F. Supp. 2d 14, 30 (D.D.C. 1998) ("it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material"); *United States v. McVeigh*, 954 F. Supp. 1441, 1449 (D. Colo. 1997) (stating that in *Kyles*, "the Supreme Court emphasized the prosecutor's duty to become informed about available information").[14] Presumably the prosecutors in this case have taken seriously their obligation to identify *Brady* materials, and thus it is reasonable, under the circumstances of this case, to require them to indicate what they have identified as such. The holdings in *Hsia* and *McVeigh* are directly on point.

In *Hsia*, the government provided the defendant with 600,000 documents, pursuant to its "open-file discovery." But the government did not identify anything as *Brady* material. *See Hsia*, 24 F. Supp. 2d at 28, 30-31. The court held that the government could not comply with *Brady* by including potentially exculpatory materials among 600,000 documents. Instead, the court held, "it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material." *Id.* at 30 (emphasis added). The court in *Hsia* ordered that once the government met that obligation, it was required to identify those materials for defense counsel:

> [O]pen-file discovery does not relieve the government of its *Brady* obligations. The government cannot meet its *Brady* obligations by providing Ms. Hsia with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack. To the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material to Ms. Hsia.

*Id.* at 29-30.

--------

[14]  It is to be expected that the published cases on this issue are district court opinions. Appellate court opinions will usually deal with post-conviction issues, such as whether withheld items were material, warranting reversal.

1    *United States v. McVeigh*, 954 F. Supp. 1441, 1444 (D. Colo. 1997), is to the
2    same effect.  In that case, the "government attorneys said that they intended to follow
3    an 'open file' policy and not make any evaluations of exculpatory evidence [and] the
4    court disapproved that approach . . . ." *Id.* at 1443.  The court instead ordered the
5    prosecutors to "inform themselves about anything that is known in all of the archives
6    and all of the data banks of all the agencies collecting information" and to "disclose
7    that which may be exculpatory under the materiality standard of *Kyles*." *Id*. at 1450.
8    The court rejected claims that such an order was too "burdensome" for the
9    government, *id.*, holding that the government does not meets its due process
10   obligations "by simply saying, 'This is an open discovery; go fish and find what you
11   want, and if there's anything that's exculpatory, you're welcome to it.'" *Id*. at 1443.

12       The same analyses applies here. The government has devoted a massive
13   amount of resources to this case, over the course of several years.  Presumably it has
14   met, or tried to meet, its constitutional obligations by reviewing things in its
15   possession for *Brady* material, and providing such (or planning to provide such) to
16   the Defendants.  Thus, for the reasons previously given, the Court should require the
17   government to disclose what the government has identified as material that must be
18   disclosed pursuant to *Brady*.

## XIV.

## JOIN MOTIONS FILED BY CO-DEFENDANTS

21       Mr. Dolan hereby moves to join the motions filed by his co-Defendants, unless
22   otherwise indicated.
23   //
24   //
25   //

1

2

## XV.

## CONCLUSION

For the foregoing reasons, Mr. Dolan requests that the Court dismiss all counts of the indictment in which he is named (or dismiss him from those counts), or that the Court enter an order providing the other relief requested above.

Respectfully submitted,

Date:  January 14, 2019

*/s/ Todd W. Burns*
Counsel for Mr.  Dolan

51

1

**CERTIFICATE OF SERVICE**

2          Undersigned counsel certifies that the foregoing pleading is true and accurate

3  to the best of information and belief, and that a copy of the foregoing document has

4  been caused to be delivered this day upon counsel for all parties via CM/ECF.

5

6  Date:  January 14, 2019          */s/ Todd W. Burns*

7                                                    Burns & Cohan, Attorneys at Law
                                                     1350 Columbia St., Suite 600
                                                     San Diego, California, 92101
8                                                    Phone:  619-236-0344
                                                     Fax:  619-768-0333
9                                                    Email: todd@burnsandcohan.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

52