TODD W. BURNS
California State Bar No. 194937
todd@burnsandcohan.com
Burns & Cohan, Attorneys at Law
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 236-0244
Facsimile: (619) 768-0333

Counsel for James Dolan

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES DOLAN (4), <br><br> Defendant. | Case No. 17-cr-0623-JLS <br><br> JAMES DOLAN'S SUPPLEMENTAL BRIEFING REGARDING HIS MOTION TO SEVER DUE TO IMPROPER JOINDER AND PREJUDICE <br><br> Date: November 17, 2020 <br> Time: 9:00 a.m. |

**INTRODUCTION**

In his pretrial motions, Capt. James Dolan (Ret.) raised issues regarding severance of the Defendants' trials due to improper and prejudicial joinder, stating:

> Based on the indictment and discovery produced so far, there are multiple bases for severing the Defendants' cases for trial, including: (1) issues related to the government's introducing evidence of a Defendant's statements to agents at trial, when that Defendant does not testify and thus is not available for cross examination, *see, e.g., Bruton v. United States*, 391 U.S. 123 (1968); (2) antagonistic defenses, *see, e.g., United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991); and (3) issues relating to the government's having really charged more than one conspiracy in each of the conspiracy counts, and the evidence against some Defendants being entirely distinct from the evidence against other Defendants. There are also practical and due process concerns with trying nine Defendants together – among other things, it asks too much for a jury to be able to keep track of the evidence related to each Defendant, the various limiting instructions, *et cetera*.

1/14/19 Dolan Memo. at 47-48 (Docket #204). Capt. Dolan's counsel indicated at

that time that he believed it was sensible for the Court to delay considering the severance issues until closer to trial, and the Court reserved ruling. Consistent with the supplemental briefing schedule subsequently set by the Court, Capt. Dolan is submitting this memorandum to address the severance issues. The discussion below proceeds as follows.

First, point (3) above relates to whether the Defendants' cases should be tried separately – severed – because they were improperly joined in the indictment under Federal Rule of Criminal Procedure 8(b). For the reasons given below, Capt. Dolan submits that he was improperly joined with several of the Defendants.

Second, even if all of the Defendants were/are properly joined in the indictment, under Rule 14 the Court should sever the Defendants into groups for trial, with Capt. Dolan being tried solely with Admiral Bruce Loveless (Ret.).

Finally, Capt. Dolan submits that the Fifth and Sixth Amendments to the United States Constitution compel providing him an individual trial. Capt. Dolan recognizes that these issues are largely foreclosed by binding precedent, but he raises them briefly below to permit the Court to rule and to preserve them for renewal during trial or, if necessary, for later appellate review.

## RULE 8(b) – SEVERANCE DUE TO IMPROPER JOINDER

As Capt. Dolan noted in his initial motions filing, the indictment and discovery show that the government has "charged more than one conspiracy in each of the conspiracy counts, and the evidence against some Defendants [is] entirely distinct from the evidence against other Defendants." That is, some of the Defendants were improperly joined with Capt. Dolan in the indictment under Federal Rule of Criminal Procedure 8(b), which states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in *the same act or transaction, or in the same series of acts or transactions*, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

//

Here, at least some of the Defendants are not alleged to have "participated in the same series of acts or transactions constituting the offenses" charged against Capt. Dolan.

This is most evident with respect to Capt. David Newland (Ret.) and Col. Enrico DeGuzman (Ret.). This case involves the Defendants' alleged actions when they were members of the Navy's Seventh Fleet Staff. The indictment alleges that: (1) Capt. Newland was on the Seventh Fleet Staff from July 2005 to July 2007; (2) Col. DeGuzman was on the Seventh Fleet Staff from July 2004 to July 2007; and (3) Capt. Dolan was on the Seventh Fleet Staff from July 2007 to July 2009. *See* Indictment at ¶¶5-6, 8. As this suggests, and the discovery shows, there was no overlap in Capt. Newland's and Col. DeGuzman's service on the Seventh Fleet staff, on the one hand, and Capt. Dolan's service on the Seventh Fleet staff, on the other. Nor is there any evidence showing that Capt. Dolan had any contact with these men, much less that he conspired with them or knowingly joined a conspiracy of which they were a part. More to the point, there is simply no evidence that Capt. Dolan "participated in the same series of acts or transactions" as did Capt. Newland and Col. DeGuzman. Accordingly, Capt. Dolan was not properly joined with these three men in the indictment. *See, e.g., United States v. Martin*, 567 F.2d 849, 853 (9th Cir. 1977) ("when multiple defendants are involved, joinder is improper unless all offenses arise out of the same series of acts or transactions," and "[i]t is not enough that the acts or offenses alleged are similar").

Furthermore, Capt. Dolan is charged with two, essentially identical, conspiracies, but it is evident that the indictment really charges several conspiracies, given the time frames and acts involved. For example, some of the Defendants are alleged to have engaged in acts long before, and long after, Capt. Dolan arrived at or left the Seventh Fleet, and there is no logical basis for trying that conduct to Capt. Dolan. Instead, what the government has alleged are, at best, several discreet conspiracies between Leonard Francis and others, and there is no evidence showing (or even an allegation) that Capt. Dolan was aware of, much less involved with, many

of those conspiracies.[1] This indicates that the government has charged the conspiracies in bad faith, which also supports severance. *See, e.g., United States v. Kaiser*, 660 F.2d 724, 733 (9th Cir. 1981). At any rate, the improper joinder alone requires severance, regardless of whether the government acted in bad faith. *See, e.g., United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir. 1980) ("[i]mproper joinder under Rule 8 requires mandatory severance"); *United States v. Metheany*, 365 F.2d 90, 95 n. 5 (9th Cir.1966) (same).

The same dynamic discussed above with respect to Capt. Newland and Col. DeGuzman is also true with respect to Bruce Loveless, Stephen Shedd, Mario Herrera, and Robert Gorsuch. Although these men served on the Seventh Fleet staff during some of the time that Capt. Dolan did, the government does not allege that they "participated in the same series of acts or transactions" that constitute the offenses charged. Instead, the government's allegations against Capt. Dolan focus on his supply/logistics role, which is discussed further below, whereas the acts and transactions alleged against the other four men named here centered on Naval operations, consistent with their job duties.

Incidentally, although the argument above was directed, at the outset, at the two conspiracies charged, the same analysis applies with respect to count 5 of the indictment, which charges solely Capt. Dolan with a substantive bribery count. That is because count 5 is founded on the same "acts and transactions" charged with respect to the alleged conspiracies. *See* Indictment at ¶43 (docket #1).

//
//
//

---

[1] For this reason, Capt. Dolan will likely request a multiple conspiracies instruction at trial.

4

For all of these reasons, under Rule 8(b) Capt. Dolan's trial must be severed from at least David Newland, Enrico DeGuzman, Bruce Loveless, Stephen Shedd, Mario Herrera, and Robert Gorsuch.[2]

# RULE 14 – SEVERANCE DUE TO PREJUDICIAL JOINDER

## I. Introduction

If the Court rejects the Rule 8 misjoinder arguments above, Capt. Dolan nonetheless seeks severance due to prejudicial joinder. Federal Rule of Criminal Procedure 14 "recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). Specifically, the Rule provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

There are three bases for severance under this rule: (1) the allegations against several of the Defendants are substantially more serious, meaning inflammatory, than are the allegations against Capt. Dolan; (2) there are likely *Bruton* issues that support severance, issues that will have to be illuminated by the government's indicating if it intends to use at trial any Defendant's statement implicating another Defendant; and (3) COVID-19 concerns counsel for trying the Defendants in groups.

## II. Severance Based On The Indictment's Allegations Reflecting Substantially Different Degrees Of Culpability

In *Zafiro*, the Supreme Court stated that severing defendants for trial is appropriate if "there is a serious risk that a joint trial" would prejudice a defendant by "prevent[ing] the jury from making a reliable determination about [that

---

[2] Of course, Capt. Dolan reserves his right to argue at trial that he was not involved in any conspiracy with the remaining Defendants (David Lausuman and Donald Hornbeck), and/or that any conspiracy involving him or them was distinct from the conspiracy charged in the indictment.

defendant's] guilt or innocence." 506 U.S. at 539. The Court explained that "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.* Furthermore, courts "should be mindful of the serious risks of prejudice and overreaching that are characteristic of joint trials, particularly when a conspiracy count is included in the indictment." *Id.* at 545 (Stevens, J., concurring). Those risks are evident here.

To begin with, the trial of this case will be complex even if each Defendant were tried separately, and that complexity will increase substantially if several Defendants are tried together. With respect to the "degree of culpability," the government's most serious accusation, by far, is that some of the Defendants "act[ed] as a team of moles for a foreign defense contractor, trading military secrets" for various material benefits – that is the language the United States Attorney's Office used in its March 14, 2017, press release announcing the indictment in this case. *See* U.S. Navy Admiral and Eight Other Officers Indicted for Trading Classified Information in Massive International Fraud and Bribery Scheme, found at www.justice.gov/opa/pr/us-navy-admiral-and-eight-other-officers-indicted-trading -classified-information-massive. The prosecutor in this case has likewise emphasized that allegation in court, claiming some of the Defendants gave Leonard Francis classified information, specifically schedules that showed upcoming port visits for Navy ships. It is obvious why the government emphasizes that claim – it hopes it will inflame the public (in its press release), the court, and, eventually, the jury.

Capt. Dolan, however, is not alleged to have been involved in any way with providing Leonard Francis ship schedules, or any other "military secrets" or classified information. Instead, as discussed at length in Capt. Dolan's January 14, 2019 memorandum, the things Capt. Dolan allegedly did for Mr. Francis (the charged "quos") are: (1) contacting Navy officials about late payments owed to Glenn Defense Marine (GDMA), Mr. Francis's company; (2) taking steps to ensure that

6

husbanding services were scheduled for port visits by Navy ships, which services were often provided by GDMA pursuant to Navy contracts that were entered into by the Navy's Fleet Industrial Supply Center (FISC); and (3) taking steps to try to de-escalate conflicts between GDMA and Navy officials. *See* 1/14/19 Dolan Memo. at 15-17 (Docket #204). All of these things were consistent with Capt. Dolan's position as the Assistant Chief of Staff for Logistics for the Seventh Fleet, which required him to monitor the supply needs of all of the Seventh Fleet's ships (and operations) and ensure those needs were met. *See, e.g.*, Indictment at ¶7 ("[i]n this role, [Capt. Dolan] was responsible for meeting the logistical needs of every ship within the Seventh Fleet's AOR"). That included (1) making sure that when a ship went into port there was a contract in place for husbanding services (and GDMA was often the husbanding service provider), and (2) maintaining proper relations with husbanding services providers (including GDMA), so that the Navy met its obligations and the provider could be counted on to support future port visits. In short, as far as "quos," the indictment alleges that Capt. Dolan did exactly what one would expect him to do to fulfill his official duties.[3] The prosecutor is aware of this, which is why he has told this Court, and will tell the jury, that even though the "quos" conduct charged against Capt. Dolan was entirely proper, Capt. Dolan is nonetheless guilty because he undertook that conduct with the intent to benefit Leonard Francis.

In sum, the government doesn't allege that Capt. Dolan's conduct was improper, just that he acted with a bad intent. That stands in marked contrast to the

---

[3] It is worth noting here that Capt. Dolan's position and responsibilities distinguish him from the other Defendants charged in this case. As discussed, his job was to ensure that the supply needs of Navy ships were met, whereas the other Defendants charged were involved in operations (though with some having specific responsibilities in planning or intelligence). Along these same lines, Capt. Dolan was considered to be a Staff Corps Officer, whereas the others were considered Line Officers.

7

allegation that some of the Defendants passed "military secrets" and classified information to Leonard Francis. That is a very serious allegation of conduct that could never be considered appropriate or within a Naval officer's responsibilities. Thus, that conduct is much more "culpable" – meaning likely to inflame the jury – than what is charged against Capt. Dolan. For this reason, Capt. Dolan's trial should be severed from the Defendants against whom those substantially more serious allegations have been made, specifically Stephen Shedd,[4] Mario Herrera,[5] and Robert Gorsuch.[6] *See, e.g., United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998) (holding that severance was required for defendants who were not involved in gang conduct charged against co-defendants).

Another especially inflammatory category of conduct that is central to the government's case is its claim that some of the Defendants influenced the Navy to send ships to ports favored by Mr. Francis (or pier-side rather than at anchor), because GDMA serviced those ports (or piers) and/or providing services at those ports (or piers) was more profitable for GDMA. This allegation implies those Defendants put Mr. Francis's interests over the Navy's. As discussed above, Capt. Dolan was involved with supply, not operations, and thus had no involvement in deciding where to send or park ships. Moreover, the conduct alleged with respect to Capt. Dolan was entirely appropriate, indeed required, given his position. Accordingly, it is unfairly prejudicial to try Capt. Dolan with the Defendants charged with directing ships to ports (or pier-side) to benefit Mr. Francis/GDMA. Those

---

[4] *See, e.g.*, Indictment at ¶¶A78, A82-83, A87, A92, A94, A96-98, A111, A116, A121, A129 (Docket #1).

[5] *See, e.g.*, Indictment at ¶¶A142, A152, A156, A158, A172-74, A176 (Docket #1).

[6] *See, e.g.*, Indictment at ¶¶A61, A75, A77 (Docket #1).

Defendants are David Newland,[7] Donald Hornbeck,[8] David Lausman,[9] and Enrico DeGuzman.[10]

Based on what is set out above, Capt. Dolan submits that under Rule 14's prejudicial joinder provision, the Court should sever his trial from all of the Defendants accept for Bruce Loveless, and that he and Admiral Loveless should be tried together.

### III. *Bruton* Concerns Likely Also Warrant Severance

As mentioned above, another potential basis for severance is "the government's introducing evidence of a Defendant's statements to agents at trial, when that Defendant does not testify and thus is not available for cross examination, *see, e.g., Bruton v. United States*, 391 U.S. 123 (1968)." In its response in opposition, the government acknowledges such issues exist, but states:

> [1] [T]he United States submits that that the admissibility of portions of particular co-defendant statements is a question best addressed during the motions in limine. Even so, case law provides a roadmap to how such statements would be admissible. [2] First, the Confrontation Clause only applies to "testimonial" statements, and statements made by co-conspirators in furtherance of the conspiracy are not testimonial. *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005). [3] Second, among testimonial statements, "only those statements that 'clearly inculpate' the defendant or are 'powerfully incriminating' implicate the 'Bruton' rule." *United States v. Yarbrough*, 852 F.2d 1522, 1537 (9th Cir. 1988) (quoting *Richardson v. Marsh*, 107 S. Ct. 1702, 1709 (1987)). Third, for any such testimonial statements that do implicate *Bruton*, Confrontation Clause problems can be overcome by appropriate redaction and a proper limiting instruction: "[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the

---

[7] *See, e.g.*, Indictment at ¶¶A6-8, A11, A13, A18-19, A21-22, A40, A54 (Docket #1).

[8] *See, e.g.*, Indictment at ¶¶A5, A14, A72, A201, A203 (Docket #1).

[9] *See, e.g.*, Indictment at ¶¶A16-17, A185, A190, A192-94, A196-97, A204, A207 (Docket #1).

[10] *See, e.g.*, Indictment at ¶¶A20, A48-49, A53 (Docket #1).

9

> confession is redacted to eliminate not only the defendant's name, but any reference to her existence." *Marsh*, 107 S. Ct. at 1709. Nothing about this analysis requires severance of any defendant from this case.

2/15/19 Gov't Memo. at 82 (Docket #237) (brackets added). There are three replies, keyed to the bracketed numbers in the preceding block quote.

First, there is no reason to delay dealing with this issue now, particularly because (1) it may inform how the case proceeds relative to COVID concerns, and (2) it is a longstanding, core reason for severing defendants for trial. *See* Fed. R. Crim. P.14, Adv. Comm. Notes, 1966 Amend. ("[a] defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant"); *see also Zafiro*, 506 U.S. at 539 (citing *Bruton*).

Second, Capt. Dolan's motion is directed at "evidence of a Defendant's statements to agents" when being questioned about the facts underlying this case. By no stretch of the imagination can those statements be considered as having been made in furtherance of the conspiracies charged.

Third, the government's general claims as to how the Court could admit such statements without prejudicing a Defendant rely on case law decided before *Crawford v. Washington*, 541 U.S. 36, 52 (2004). Because any Defendant's statement to agents is obviously "testimonial" under *Crawford*, any such statement that implicates a co-Defendant must be precluded from a joint trial, or that Defendant must be tried separately. *Id.* ("[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard"). And though it is not clear what the government means when it claims that the Court may nonetheless admit such statements with a "limiting instruction," that is impermissible. *See id.* at 60-68. At any rate, so that the Court and parties may properly address any such issues, and whether they warrant severance, the government should be required to identify in its response any such statements that it intends to use at trial.

//
//

### IV. COVID-19 Concerns Also Warrant Severance

Concerns relating to COVID-19 also warrant severance. Notably, Rule 14 broadly authorizes severance if holding a joint trial "appears to prejudice" a defendant. There is no doubt that a lengthy delay in proceeding to trial will, at some point, prejudice a defendant. Indeed, the Sixth Amendment guarantees the right to a speedy trial, and the Speedy Trial Act envisions 70 days from arraignment to trial. While that time-line was, of course, not feasible in this case, it gives perspective on the fact that at some point a defendant has a compelling interest to proceed to trial, and delaying trial creates prejudice, not least due to the prolonged stress and uncertainty that a lengthy delay causes the Defendants and their loved ones.

In that vein, Capt. Dolan has a strong desire to proceed to trial, a necessary step to resolving the claims made and getting on with his life, almost four years after he was indicted and several more years after his life was upended (and his retirement from the Navy delayed) by the Navy's investigation. However, as the Court discussed during the last hearing held in this case, due to COVID-19 proceeding to trial with eight or nine defendants (or even four or five) will present logistical concerns for an unknown amount of time. Capt. Dolan submits that it is entirely appropriate for the Court to consider the COVID-19 situation as a factor supporting severance, and to proceed to trial with a more virus-manageable group of Defendants – specifically, Capt. Dolan and Admiral Loveless – in the relatively near future. At some point, the alternative is dismissal. *See United States v. Olson*, C.D. Cal. No. 17-cr-0076-CJC (Oct. 14, 2020) (dismissing case due to delay in trial caused by Central District of California's suspension of jury trials as a result of COVID-19) (Docket #98).

### SEVERANCE DUE TO CONSTITUTIONAL CONSIDERATIONS

Capt. Dolan believes there are additional concerns, constitutional and statutory, that warrant severance. The Constitution guarantees a fair jury trial and due process, which encompasses the right to present a defense. *See, e.g.*, *Holmes v. South*

11

*Carolina*, 547 U.S. 319, 324 (2006) ("the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense") (quotation and citation omitted). A trial with multiple defendants almost always presents a substantial risk of infringing those, and other, constitutional and statutory rights. That dynamic begins with jury selection, during which the government asserts that the Defendants should have to collectively agree on defense peremptory strikes, or divvy those strikes up amongst themselves. That will almost surely lead to disagreement and/or a jury being seated on which some or all of the Defendants believe there are jurors who should have been excused. The government, of course, will face no such dilemma.

That dynamic will arise throughout trial, because the Defendants, and their counsel, don't operate as a monolith. Instead, counsel for each of the Defendants will have their own strategy and tactics, and will pursue various issues, themes, sub-themes, arguments, *et cetera*, that are relevant to their defense. It is almost guaranteed that along the way defense counsel will repeatedly step on each others' toes in these regards, intentionally and not, and sometimes seriously. And when that happens, a Defendant's right to present his defense will be compromised, perhaps gravely, for the sake of governmental efficiency.

Capt. Dolan submits that is not fair, nor is it consistent with his constitutional rights to present a defense, a jury trial, confrontation, and due process. Capt. Dolan also submits that the prevailing, stingy approach to severance in the federal courts is inconsistent with the common law approach to this issue, and thus deviates from what the framers enshrined in the Constitution. *See, e.g.*, 5 Anderson, Wharton's Criminal Law and Procedure §1944 (1957). However, because he recognizes that these issues are arguably controlled by precedent that binds this Court, Capt. Dolan will not expound on them here. He instead raises them briefly to permit the Court to rule and to preserve these issues for renewal, if necessary, during trial and/or on appeal.

//

**CONCLUSION**

For the foregoing reasons, Capt. Dolan requests that the Court sever his case for trial along the lines set out above.

Respectfully submitted,

Date: October 16, 2020

*/s/ Todd W. Burns*
Counsel for Capt. James Dolan (Ret.)

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that the foregoing pleading is true and accurate to the best of information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon counsel for all parties via CM/ECF.

Date: October 16, 2020

*/s/ Todd W. Burns*
Burns & Cohan, Attorneys at Law
1350 Columbia St., Suite 600
San Diego, California, 92101
Phone: 619-236-0344
Fax: 619-768-0333
Email: todd@burnsandcohan.com