TODD W. BURNS
California State Bar No. 194937
todd@burnsandcohan.com
Burns & Cohan, Attorneys at Law
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 236-0244
Facsimile: (619) 768-0333

Counsel for Capt. James Dolan (Ret.)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>  vs.<br><br>JAMES DOLAN (4),<br><br>          Defendant. | Case No. 17-cr-0623-JLS<br><br>DEFENDANT JAMES DOLAN'S NOTICE OF MOTION AND MOTION TO ADMIT PART OF HIS POST-ARREST STATEMENT UNDER THE RULE OF COMPLETENESS, AND TO PRECLUDE AN AMBIGUOUS STATEMENT UNDER FED. R. EVID. 401-03 |

## I.   Introduction

The government has provided notice that intends to introduce sixteen audio clips from statements James Dolan made during his post-arrest interrogation. For the reasons given below, Mr. Dolan moves the Court to enter an order: (1) requiring the government to extend Dolan clip 1 (of 16) under the rule of completeness, *see* Fed. R. Evid. 106; and (2) preclude Dolan clip 13 (of 16) because the meaning of the exchange in that clip is ambiguous, therefore the clip is irrelevant, likely to cause confusion and unfair prejudice, and calls for speculation. *See* Fed. R. Evid. 401-03.

//

//

## II. Dolan Clip 1

The first clip at issue is set out in the block quote below. The bolded language is what the government proposes to introduce, the un-bolded language is what Mr. Dolan moves to include under the rule of completeness:

DOLAN: **Because they were both - you know, that - that constantly bashing. Francis was bashing FISC - I would hear him bash FISC, and I would hear FISC bash Leonard and I was like, um - oh, I'm sorry - with the - with the - what sticks out bad about Francis for me was he started to become (inaudible) he was an SOB.** He he must have had lawyers, you know, this long and all that because in the Vladivostok - because I think you took me back -

AGENT: Okay.

DOLAN: - is what - in that Vladivostok visit -

AGENT: Right.

DOLAN: - have you heard anything about it? If it's (inaudible).

AGENT: A little bit.

DOLAN: - you don't have to answer (inaudible).

AGENT: That's fine.

DOLAN: But that was the one where Francis lost the bid to, I think, one of the few people big boys that was centered on the 5th Fleet and he protested and that's when Andy Benson and Joe Boggs came to me and said, hey we may not be able to support this, um, this -

AGENT: Visit?

DOLAN: - visit and I'm like, so now - just like I said, um, Mary Beth, I'm pissed at both parties because it's like, you can't - you can't - Francis caught the shit and, by the way, FISC - I'm pretty sure at the farm - Don't give it to Francis, give to the other guy. And they're like - they both - I - I - this is my stupidity. I go to the 7th Fleet Commander - Admiral Crowder at the time - and I say - you know, we're having a staff meeting and I go - you, know, kind of joking off I'm like, hey in the for what it's worth category, don't worry Admiral, but these guys are say - and and Crowder had a good sense of humor, he's like, Jim, come on. So I was at the point where I went back to, uh, Traaen -

| | | |
|---|---|---|
| 1 | AGENT: | Uh-huh. |
| 2 | DOLAN: | - and (inaudible) and I said, hey I'm sure, you know, the guy that won, there's got to be something in the FAR that says that, um, this visit can be done, (inaudible). You know, to try to say that either Francis or FISC Yoko is going to dictate where the 7th Fleet Commander can go. I didn't - I didn't buy it. So I don't know if the contracting staff is weak, if - if the legal guys part of the contracting thing just felt there was - it just - it was a, um - and that was still Andy Benson (inaudible) - |
| 7 | AGENT: | So you understood like the importance operationally and - and knew that Glenn Defense could fulfill the requirements so you kind of advocated for them so that operationally wouldn't be impacted - |
| 9 | DOLAN: | I didn't. I let the bidding process go - which I did all the time - you know - oh I gotta tell you one thing with the - sub guys are in it but I was actually [advocating], or whatever you would say, for the guy who won the bid. But they didn't - they said, well no if we need - (inaudible) you know how big the FAR is, but they said no. We actually let, uh, if we let, um, that guy the winner that's what Jim and Michelle told me, if we - if they had let him go - well, so is what FISC was telling me the time - |
| 14 | AGENT: | Right. |
| 15 | DOLAN: | - and Francis could, um, protest (inaudible) or it would have cost the government a lot of money. And I'm like, with the (inaudible) being as big - as large as it is, there's got to be a way - there's got to be a way to support this visit. Now as it turns out the visit got canceled, which is like, whew, it just - it shouldn't have - it shouldn't have been like that. So I didn't - I really and truly didn't advocate for either one. I just wanted the right - so first and foremost I wanted the right support. |

As indicated, the government proposes to introduce only the bolded portion of what is quoted above. Without including more, Mr. Dolan's statement that Francis "started to become (inaudible) he was an SOB" is unmoored from time and context – specifically, that what "sticks out" for Mr. Dolan is that "Francis started to become . . . an SOB" when the Vladivostok protest issue arose.

In *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021), the Ninth Circuit discussed the interaction between Rule 106's rule of completeness and Rule 802's hearsay rule:

3

> In the interrogation context, for example, we have held that Rule 106 provides for the admission of additional portions of a defendant's statement when the prosecution offers a redacted version that "distorts the meaning of the statement," "excludes information substantially exculpatory of the declarant," or *"excludes portions of a statement that are . . . explanatory of [or] relevant to the admitted passages." United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) (citations and quotation marks omitted). By contrast, hearsay evidence is evidence offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). There is no conflict between evidence introduced under the rule of completeness and the bar on inadmissible hearsay because the former serves the purpose of correcting a distortion created by an opposing party's misleading proffer of part of a document or recording, while the latter serves the purpose of barring introduction of hearsay evidence proffered for its truth.

*Lopez*, 4 F.4th at 715 (emphasis added). Under this analysis, the additional portion of Mr. Dolan's statement cited above should be admitted because it is "explanatory to or relevant to" the portion the government seeks to use.

Accordingly, the Court should order the government to include in the audio clip the additional portion of Mr. Dolan's statement indicated above. Alternatively, the Court should order the government to cut the clip after Mr. Dolan said, "I would hear FISC bash Leonard," which would obviate the need to provide context for Mr. Dolan's statement that Francis "started to become . . . an SOB."

**III.  Dolan Clip 13**

Mr. Dolan moves to preclude what the government has labeled Dolan clip 13, which has the following exchange:

> AGENT: The woman being available, you know, having the opportunity to engage with them sexually, but you did not spend the night off the ship -
>
> DOLAN: No. No.

This statement should be precluded because the meaning is ambiguous, therefore it is irrelevant, and, more problematically, confusing and likely to mislead the jury. The most literal meaning is that Mr. Dolan denied the Agent's assertions that (1) there were women "available," and (2) Mr. Dolan did not "spend the night off the ship." However, presumably the government instead seeks to raise the inference that there were women "available." That is not what Mr. Dolan said, nor did the Agent seek to

4

clarify the questions or answers. Furthermore, the surrounding context does not provide that clarification. Accordingly, the clip should be precluded.

With respect to this issue, the government says that Dolan clip 13 "makes sense in the context of the clip before" (*i.e.*, Dolan clip 12). The relevant portion of clip 12 states:

| | | |
|---|---|---|
| AGENT: | | Okay. So then we go to Indonesia. Do you remember your Indonesia port visit? |
| DOLAN: | | Um, Indonesia - |
| AGENT: | | Which again is - |
| DOLAN: | | - which part of - |
| AGENT: | | Jakarta? |
| DOLAN: | | Oh, Jakarta, right?  Right. |
| AGENT: | | So what's your recollection?  Do you remember a social, kind of, event with Francis during that visit or, again, is it just Francis, um, having the women, uh, just show up at your hotel? |
| DOLAN: | | Well we didn't have hotel rooms or anything because I think there wasn't general liberty in Jakarta. |
| AGENT: | | Okay. |
| DOLAN: | | Um, so - |
| AGENT: | | So again, is it just like having that suite available for a couple - |
| DOLAN: | | Suite available - yeah. |
| AGENT: | | Okay.  Well was Francis present? |
| DOLAN: | | Was Francis present? |
| AGENT: | | Yeah. |
| DOLAN: | | Yes.  He was present. |

This clip only indicates that Francis had a suite in Jakarta and was there – it does not in any way address the ambiguity in clip 13, specifically what appears to be Mr. Dolan's denial that (1) there were women "available," and (2) he did not "spend the night off the ship."

In sum, the questioning was unclear, the answers are consequently unclear, and admitting the statement and asking the jury to speculate as to the meaning is contrary to at least Rule 403.

Respectfully submitted,

Date: May 2, 2022                                         */s/ Todd W. Burns*
                                                          Counsel for James Dolan